UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS HUNT,

       Plaintiff,

                                **Case No. 8:07-cv-1168-T-30TBM**

vs.

                                **JURY TRIAL DEMANDED**

LAW LIBRARY BOARD,
  a Board created by
  Hillsborough County, Florida;
                                **INJUNCTIVE RELIEF REQUESTED**

NORMA J. WISE,
  in her official capacity as Director
  of the James J. Lunsford Law Library,
  and individually; and,

DAVID L. PILVER,
  individually,

       Defendants.
_____/

## VERIFIED AMENDED COMPLAINT

      Plaintiff Dennis Hunt sues Defendants Law Library Board, a Board created by

Hillsborough County, Florida; Norma J. Wise, individually and in her official capacity as the

Director of the James J. Lunsford Law Library, and David L. Pilver, individually, to redress the

abridgement, under color of state law, of Plaintiff's rights protected by the First and Fourteenth

Amendments to the United States Constitution. Plaintiff demands trial by jury and alleges:

## JURISDICTION AND VENUE

      1.     This is an action for damages and injunctive relief arising from Defendants'

violations of Plaintiff's rights guaranteed under the First and Fourteenth Amendments to the

United States Constitution. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and

Hunt v. Hillsborough County et al        Doc. 9

Dockets.Justia.com

42 U.S.C. §1983.

2.     The case or controversy is appropriately heard in the Tampa Division of the Middle District of Florida pursuant to Middle District Local Rule 1.02(c), as the Tampa Division encompasses the counties having the greatest nexus with the causes of action and claims of the Plaintiff.

## PARTIES

3.     Plaintiff Dennis Hunt is a citizen of the United States and the State of Florida and a resident of Hillsborough County, Florida where the events giving rise to this action occurred.

4.     Defendant the Law Library Board is a public board created by Hillsborough County, Florida and charged with operating the James J. Lunsford Law Library, a public library located in Tampa, Florida, and funded with revenue obtained by Hillsborough County, Florida from occupational licenses and in the past by the Hillsborough County Clerk of Court from lawsuit filing fees.

5.     At certain times, Norma J. Wise was the Director of the James J. Lunsford Law Library, and all of her actions alleged herein were under color of state law, and occurred in Hillsborough County, Florida.

6.     At certain times, David L. Pilver was an employee of the James J. Lunsford Law Library, and all of his actions alleged herein were under color of state law, and occurred in Hillsborough County, Florida.

## FACTUAL ALLEGATIONS

7.     All conditions precedent to the maintenance of this action have occurred.

8.     The James J. Lunsford Law Library is a public library, created by Hillsborough

2

County Ordinance No. 01-16. Hillsborough County maintains a Law Library Fund "for the purpose of procuring and maintaining a law library for the use of the courts, the members of the bench and bar of Hillsborough County and the general public." Id. at § 3. The Law Library Fund is funded by occupational license taxes collected from attorneys and court filing fees charged by the Hillsborough County Clerk of Court to persons filing lawsuits.

9.      Defendant Law Library Board was created by Hillsborough County Ordinance No. 01-16, § 6. It has "full power and authority to . . . maintain such law library with such . . . facilities as it may deem expedient" and to "appoint a competent director of the law library . . .." Id. at § 8.

10.     Defendant Wise was appointed by Defendant Law Library Board as its Director. Her duties included the day-to-day operations of the James J. Lunsford Law Library, and she is the final policymaker for day-to-day operations of the law library.

11.     Defendant Pilver was hired by Defendant Law Library Board or Defendant Wise, or her designee, to work as a library assistant. Among other things, Defendant Pilver was authorized by Defendant Wise or her designee to assist patrons, make change, monitor the front desk, and to open and close the James J. Lunsford Library.

12.     The James J. Lunsford Law Library is open to the general public.

13.     In 2002 and 2003, Plaintiff was a patron of the James J. Lunsford Law Library. He patronized the law library several times per week.

14.     On several occasions in 2003, Plaintiff complained of certain policies of the James J. Lunsford Law Library and practices by Mr. Pilver. Specifically, Plaintiff requested to bring in his own photocopying machine, but Defendant Pilver advised him that there was a "rule"

3

prohibiting Plaintiff from bringing in his own photocopying machine.

15. Plaintiff asked to see the rule, and Defendant Pilver became angry with him because he believed Plaintiff had no right to question Defendant Pilver's authority. Defendant Pilver made it plain to Plaintiff that he did not appreciate Plaintiff's inquiries.

16. Thus, Plaintiff sent a public records request to Defendant Wise on April 30, 2003, asking for the "policies of the library" because a "desk clerk" told him he could not "copy library materials with a fax copy machine of my own." (Exhibit "1").

17. In response on May 1, 2003, Defendant Wise explained that there was no specific rule barring the use by patrons of their own photocopy machines, but the reason the James J. Lunsford Law Library would not permit patrons to bring in their own photocopying machines is because "the money received from the copiers . . . is put back into the purchase of books and other associated operating costs thus reducing the amount of money needed from the County's General Fund." (Exhibit "2").

18. Moreover, Defendant Wise wrote, if an exception was made, "our copy revenue could be reduced, and we would have to apply more book/subscription cutbacks." (Exhibit "2").

19. Plaintiff responded to Defendant Wise on May 5, 2003, questioning the validity of Defendant Wise's assertions about lost revenue. Plaintiff also inquired as to who collected the money from the photocopy machines, and whether there were adequate policies to prevent theft. He also complained about the desk clerk -- Defendant Pilver -- watching "cable television" while working. (Exhibit "3").

20. Clearly, Plaintiff's complaints about the photocopier policy were of great concern to Defendant Wise. On May 19, 2003, Defendant Wise wrote an e-mail to the law library at the

4

University of California, advising that a patron wished to use his own photocopier instead of the James J. Lunsford Law Library's coin operated photocopier. "Revenue from our copiers is a significant part of our budget, and we've had an unwritten policy to not allow this." Defendant Wise wanted to know "if any other public access libraries have a policy on this (written or unwritten)." (Exhibit "4").

21.     After his complaints, which were protected by the First Amendment, Plaintiff began to be singled out when he visited the James J. Lunsford Law Library. Defendant Pilver began treating him with disdain and disrespect, expressing displeasure with Plaintiff's requests for books shelved behind the front desk. Defendant Pilver even began handing books to Plaintiff in a manner Plaintiff deemed injurious and offensive.

22.     As a result, on May 19, 2003, Plaintiff wrote another letter of complaint to Defendant Wise, again complaining of certain actions by Defendant Pilver. (Exhibit "5").

23.     Meanwhile, Plaintiff's complaints about the no personal photocopier rules reached the Law Library Board, and on June 16, 2003, the Law Library Board met to address that issue and to discuss legislation "which takes away all funding that the Library received from Court filing fees." (Exhibit "6").

24.     An Assistant Hillsborough County Attorney attended the Board meeting, as did Plaintiff. "Rudy Haidermota from the County Attorney advised the Board & Mr. Hunt that pursuant to section 119.08 Florida Statutes, patrons are allowed to bring in their own duplicating devices." (Exhibit "6").

25.     Defendant Wise and Defendant Pilver were furious with Plaintiff for raising the issue because they were concerned with loss of revenue. Given the legislation further reducing

5

funding from "Court filing fees," Defendant Wise was even more concerned with the impact Plaintiff's complaint about personal photocopiers would have on revenue.

26.     Plaintiff thereafter began bringing his personal photocopier to the James J. Lunsford Law Library.

27.     Defendant Pilver was already angry that Plaintiff exposed Defendant Pilver's fabrication of the "no personal photocopier" rule to the Law Library Board, and his complaints about his misdeeds as the library assistant, but Defendant Pilver became even angrier when Plaintiff brought his personal photocopier. Defendant Pilver and Defendant Wise decided to "get even."

28.     Plaintiff routinely studied in the James J. Lunsford Library until closing time. Defendant Pilver knew this. Defendant Pilver always notified the patrons of closing time approximately five minutes beforehand over the intercom system.

29.     On July 1, 2003, Defendant Pilver did not make the announcement. As a result, Plaintiff realized a few minutes before 8:00 p.m. that he had not heard the five minute notification and actually was still in the law library at closing time. Plaintiff quickly packed his items and was heading for the door when Defendant Pilver confronted him.

    a.     Defendant Pilver blocked Plaintiff's way and asked him why he had not already left the premises. Plaintiff attempted to explain, but Defendant Pilver was clearly seeking a confrontation.

    b.     Plaintiff requested that Defendant Pilver move so that he would no longer block Plaintiff's access to the door, but Defendant Pilver refused, accusing Plaintiff of "trespassing."

6

c.     After berating Plaintiff for several minutes, loudly, Defendant Pilver finally moved, and Plaintiff was allowed to leave. The time was 8:02 p.m.

30.     As he was leaving, Plaintiff observed Defendant Pilver speaking to law enforcement officers, and because the confrontation had occurred moments ago, Plaintiff decided he should tell the law enforcement officers about Defendant Pilver's actions, and he did so.

31.     Thereafter, Plaintiff recounted Defendant Pilver's actions in a letter to Defendant Wise dated July 3, 2003, closing with "I do believe that David Pilver is ill suited for the position of desk clerk at the law library. Mr. Pilver does not want to be disturbed while watching his television programs." (Exhibit "7").

32.     On July 3, 2005, Plaintiff returned to the James J. Lunsford Law Library and studied and read books for several hours. The Librarian, Donna Barnes, was on duty, and Plaintiff passed her as he entered. Plaintiff, being a regular patron, recognized Ms. Barnes. They had had cordial interactions in the past. As Plaintiff entered, Ms. Barnes looked up and saw Plaintiff enter.

33.     As closing time approached, Ms. Barnes came around, as she had done in the past, and politely told Plaintiff that the law library would soon be closing, and Plaintiff warmly acknowledged her notification.

34.     Plaintiff packed up his belongings, and as he passed Ms. Barnes on the way out of the law library, Plaintiff wished her a "happy Fourth of July," to which Ms. Barnes cheerfully replied "you, too!"

35.     Plaintiff was pleased that Ms. Barnes was so gracious and polite, and he remained hopeful that Mr. Pilver's intemperate behavior, which he reported by letter dated July 3, 2005

7

(Exhibit "7"), would not be repeated.

36.     On July 5, 2005, Plaintiff returned to the James J. Lunsford Law Library at approximately 3:00 p.m. Plaintiff entered and passed the front desk, where Defendant Pilver was sitting. Plaintiff saw Defendant Pilver, and Defendant Pilver saw him. No words were exchanged between them.

37.     Plaintiff went to a work station, and he unloaded his materials to begin his legal research. After retrieving books from the shelves and while reviewing his paperwork, and after being in the law library for several minutes, Plaintiff approached the front desk to retrieve a book.

38.     A security officer was chatting with Defendant Pilver. The security guard then said to Plaintiff, "oh, you have to leave." Plaintiff responded that he was there to do legal research, retrieved the book he needed and returned to his work station.

39.     As Plaintiff was copying pages of books on his personal copier, and as he was reshelving the books, two additional security guards were present. One raised his hand and gestured, and Plaintiff assumed from the gesture that the security guard, whom Plaintiff thought was a law enforcement officer, wanted him to produce his identification. Plaintiff retrieved his driver's license and gave it to the security guard and returned to his work station.

40.     Almost fifteen minutes later, actual officers from the Tampa Police Department arrived, and Defendant Pilver approached with the police officer. According to Tampa Police Department Officer Charles Hathcox, Defendant Pilver advised Plaintiff in Officer Hathcox's presence that Plaintiff "was no longer welcome in the library, and he was trespassed from the premises." (Exhibit "8").

8

41.     Defendant Pilver's action, endorsed, approved and authorized by the other Defendants, was unconstitutional and directly led to Plaintiff's arrest by the Tampa Police Department and prosecution by the Florida State's Attorney's Office for the Thirteenth Judicial Circuit.

42.     Defendant Pilver was authorized by Defendant Wise or her assistant to issue the trespass warning, and their motive was to retaliate against Plaintiff because he wrote letters of complaint regarding the no personal photocopier rule, because he petitioned the government for change, because he questioned Defendant Wise's management of the law library and because he complained about Defendant Pilver's mistreatment of him.

43.     Defendant Pilver's actions and his authorization to trespass Plaintiff were endorsed and approved by Defendant Wise, through her authorization as Director by the Defendant Law Library Board. Each of these actions alleged were under color of state law.

44.     In retaliating against Plaintiff because of his protected First Amendment activities, Defendant Pilver's order that Plaintiff was no longer welcome and was banned from returning to the James J. Lunsford Law Library was an exercise of his authority, within the course and scope of his employment as a library assistant working for Defendant Law Library Board, under the control and direction of Defendant Wise, acting as the Director of the James J. Lunsford Law Library.

45.     Defendant Pilver's actions were taken at the direction of the Director, Defendant Wise or her designee, under color of state law, acting as the final policymaker and final decisionmaker, and Defendant Pilver's actions, which were authorized and approved by Defendant Wise, were the official actions of the Defendant Law Library Board.

9

46.     Defendants, each and jointly, had a policy or practice of retaliating against individuals who complained of mistreatment, and therefore a policy of violating the First and Fourteenth Amendment rights of citizens.

47.     The First Amendment guarantees, among other things, the right to freedom of speech, freedom of assembly, freedom of association and to petition the government for change.

48.     As alleged herein, Plaintiff exercised his First Amendment rights by speaking out against mistreatment by Defendant Pilver, mismanagement by Defendant Wise, and petitioned the government for change by seeking a revision of the unwritten rule prohibiting Plaintiff from bringing his personal copier into the James J. Lunsford Law Library.

49.     The guaranties afforded by the First Amendment to the Constitution of the United States are protected by the due process clause of the Fourteenth Amendment.

50.     Plaintiff has, and at all times, had a right under the First Amendment to the United States Constitution, to enter the James J. Lunsford Law Library, to use the facilities in the manner permitted by law, to read, review and receive the information in the books maintained by the James J. Lunsford Law Library.

51.     Defendants, under color of state law, prohibited in the past, and now prohibit and will continue to prohibit Mr. Hunt's access to the James J. Lunsford Law Library by issuing the perpetual trespass warning and threatening criminal arrest and prosecution for trespass, and such actions violate Mr. Hunt's First Amendment and Fourteenth Amendment rights to freedom of speech, liberty, to associate with others and to peaceably assemble.

52.     Defendant Pilver's and Defendant Wise's decision to issue a trespass warning against Plaintiff was in retaliation for Plaintiff's exercise of his First Amendment rights,

including the right to free speech and petition the government for change.

53. Defendant Law Library Board endorsed, affirmed or otherwise authorized or approved the actions by Defendant Pilver and Defendant Wise.

54. Defendants, by their acts, imposed a deliberate and unconstitutional policy to bar Plaintiff from entering the James J. Lunsford Law Library.

55. Defendant Wise, or Defendant Pilver with Defendant Wise's approval, made a deliberate choice to follow a course of action made from among various alternatives, and Defendant Wise or Defendant Pilver with Defendant Wise's approval, was the official, or they were the officials, responsible for establishing final policy with respect to who would be allowed to enter or use the James J. Lunsford Law Library.

56. Despite no written or unwritten policy, Plaintiff remains barred by all Defendants from entering the James J. Lunsford law library under threat of criminal prosecution for trespass.

57. Defendant Law Library Board or Defendant Wise, or both, intentionally deprived Plaintiff of his First and Fourteenth Amendment rights by authorizing Defendant Pilver to issues a permanent trespass warning to Plaintiff.

58. Defendants' permanent ban of Plaintiff from entering the James J. Lunsford Law Library is unconstitutional and violates Plaintiff's First and Fourteenth Amendment rights and have chilled and continue to chill Plaintiff in his exercise and enjoyment of rights protected by the First and Fourteenth Amendments.

## COUNT I

59. This action, against Defendant Law Library Board, arises under 42 U.S.C. §1983.

60. Plaintiff realleges paragraphs 1-58.

61.     Plaintiff has a First Amendment right to receive information and to enter and use the James J. Lunsford Law Library.

62.     Defendant Law Library Board violated Plaintiff's First Amendment rights by barring him from the law library.

63.     As a result of Defendant's actions, Plaintiff has suffered mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and he will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, a preliminary and permanent injunction that Defendant not violate Plaintiff's First and Fourteenth Amendment rights in the future, and such other and further equitable relief as this Court deems appropriate.

## COUNT II

64.     This action, against Defendant Wise, arises under 42 U.S.C. §1983.

65.     Plaintiff realleges paragraphs 1-58.

66.     Plaintiff has a First Amendment right to receive information and to enter and use the James J. Lunsford Law Library.

67.     Defendant Wise violated Plaintiff's First Amendment rights by barring him from the law library, as Plaintiff has a First Amendment right to receive information and to enter and use the James J. Lunsford Law Library.

68.     Defendant Wise, the final policymaker for the James J. Lunsford Law Library regarding who is or is not allowed to use or enter the law library, under color of state law, deprived Plaintiff of rights, privileges or immunities secured by the Constitution of the United

States by retaliating against Plaintiff for exercising his First Amendment rights.

69. As a result of Defendant's actions, Plaintiff has suffered mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and he will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, a preliminary and permanent injunction that Defendant not violate Plaintiff's First and Fourteenth Amendment rights in the future, and such other and further equitable relief as this Court deems appropriate.

## COUNT III

70. This action, against Defendant Pilver, arises under 42 U.S.C. §1983.

71. Plaintiff realleges paragraphs 1-58.

72. Plaintiff has a First Amendment right to receive information and to enter and use the James J. Lunsford Law Library.

73. Defendant Pilver violated Plaintiff's First Amendment rights by barring him from the law library, as Plaintiff has a First Amendment right to receive information and to enter and use the James J. Lunsford Law Library.

74. As a result of Defendant's actions, Plaintiff has suffered mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and he will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, a preliminary and permanent injunction that Defendant not violate Plaintiff's First and Fourteenth Amendment rights in the future, and such

other and further equitable relief as this Court deems appropriate.

**COUNT IV**

75.     This action, against Defendant Law Library Board and Defendant Wise in her official capacity and arises under 42 U.S.C. §1983.

76.     Plaintiff realleges paragraphs 1-58.

77.     Plaintiff has a First Amendment right to receive information and to enter and use the James J. Lunsford Law Library.

78.     Under the Due Process Clause of the Fourteenth Amendment, one acting under color of state law may not "deprive any person of life, liberty, or property, without due process of law." The Fourteenth Amendment requires that one acting under color of state law provide fair procedures and an impartial decisionmaker before infringing on a person's fundamental rights.

79.     The James J. Lunsford Law Library "has no written or non-written policies concerning 'trespass warnings' or 'enforcement of trespass warnings,'" (Exhibit "9"),

80.     Defendants caused or approved Plaintiff's permanent ban from the James J. Lunsford Law Library without affording Plaintiff any process to challenge the action. Defendants reasons for banning Plaintiff were for an improper motive and by means that were pretextual, arbitrary and capricious.

81.     Prior to Defendant Pilver's pronouncement that Plaintiff "was no longer welcome in the library," none of the Defendants afforded Plaintiff notice of the intended action to ban him, the evidence supporting the ban, or the opportunity for a hearing before an impartial decisionmaker. Moreover, there were and are no fair procedures to challenge the action before an impartial decisionmaker or any opportunity for Plaintiff to present his "side of the story"

14

before the Defendants deprived him of his First and Fourteenth Amendment rights.

82. Thus, Defendant's actions violated Plaintiff's rights to procedural and substantive due process, as guaranteed by the Due Process Clause of the Fourteenth Amendment.

83. As a result of Defendant's actions, Plaintiff has suffered mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and he will suffer the losses in the future.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, a preliminary and permanent injunction that Defendant not violate Plaintiff's First and Fourteenth Amendment rights in the future, and such other and further equitable relief as this Court deems appropriate.

DATED this 13 day of March, 2008.

RYAN CHRISTOPHER RODEMS, ESQUIRE
Florida Bar No. 947652
Attorney for Plaintiff
BARKER, RODEMS & COOK, P.A.
300 West Platt Street, Suite 150
Tampa, Florida 33606
Telephone: (813) 489-1001
Fax: (813) 489-1008
E-mail: rodems@barkerrodemsandcook.com

## **VERIFICATION**

I, Dennis Hunt, declare under penalty of perjury that the factual allegations contained herein are true and correct to the best of my knowledge and belief.

EXECUTED this __13__ day of March, 2008.

_Dennis Hunt_
DENNIS HUNT

FROM: DENNIS HUNT
    14111 MOSSY GLEN LANE, #203
    TAMPA, FL 33613
TELE: (813) 975-0050

TO: NORMA WISE, DIRECTOR
    JAMES J. LUNSFORD LAW LIBRARY
    501 E. KENNEDY BLVD., SUITE 100
    TAMPA, FL 33602
TELE: (813) 272-5818

DATE: APRIL 30, 2003

RE: LIBRARY POLICIES MANUAL AND POLICY
    ON COPY OF MATERIALS.

    DEAR MS. WISE:

    This is a public information request
to view and/or obtain the policies of the
library. This is to include public use
of the library and copying of library
materials for research and litigation
preparation. I had been advised by the
desk clerk that I cannot copy library
materials with a fax copy machine of
my own. If there is such a prohibitive
policy I would like to know reason(s)
for this.



EXHIBIT
exhibit
1

I continuously find missing pages and sometimes entire chapters of material from loose leaf binder materials. With a prohibitive policy of copying and in-house copy machines costed for profit generation, I can easily understand why materials are simply taken from the library.

Although I do not think indigency equates to thieft of materials, there are those of the public who may not have the wealth of attornies and law firms. I understand attornies and law firms being of wealth have special privileges not available to the general public and most certainly not available to the indigent, to borrow material and take them out free of cost.

Sincerely

Dennis Hunt

Dennis Hunt

# JAMES J. LUNSFORD LAW LIBRARY
## Hillsborough County
### 501 E. KENNEDY BOULEVARD - SUITE 100
### TAMPA, FLORIDA 33602

NORMA J. WISE, Director

(813) 272-5818
FAX (813) 272-5226

May 1, 2003

Mr. Dennis Hunt
14111 Mossy Glen Lane, #203
Tampa, FL 33613

Re:  Library Policies

Dear Mr. Hunt:

Thank you for your letter of April 30, 2003, as requested attached is a copy of the Law Library Rules.

Although not specifically addressed in the Law Library Rules, I would like to try to clarify for you why we do not allow anyone to bring in their own copy machines and/or other devices (e.g. scanners). The Law Library is an Agency under Hillsborough County and, as such, is not in the business of making a profit. We receive revenues from court filing fees, attorney's occupational licenses, County General Fund and self-generated revenues. All money received for services provided goes back into the operation of the Library. The money received from the copiers, together with the other revenue is put back into the purchase of books and other associated operating costs thus reducing the amount of money needed from the County's General Fund. We believe the cost per copy ($.20) is a fair price and has not been increased since 1988.

All policies apply to every patron of the Law Library. Attorneys and Judges get the same privileges that any patron of the Library gets. Attorneys are required by The Florida Bar to keep current on legal topics, and we keep a small number of audio tape courses available for them provided by The Florida Bar. They may check these tapes out for overnight use if they have an office in Hillsborough County. If a non-attorney or an attorney from another county wants to listen to the tapes, they may if they listen to them in the library.

I would like to reiterate that the policies of the Library apply to all patrons. If we were to make an exception for you, or any person, that would have to apply to all patrons. In that case our copy revenue could be reduced, and we would have to apply more book/subscription cutbacks. This is something we have struggled with for years and have felt it to be appropriate under the circumstances.

I have spoken with Sandra Kellaher, Chair of the Law Library Board, and at her suggestion this matter will be put on the agenda for the next Board meeting. I will inform you of the date and time of that meeting as soon as it is set.

Please let me know if I can be of any further service to you.

Sincerely,

*Norma J. Wise*

Norma J. Wise,
Director

Attachments

CC: Sandra M. Kellaher, Esq.

**EXHIBIT**

tabbies

2

Dennis Hunt
14111 Mossy Glen Lane, #203
Tampa, FL 33613

Tele: (813) 978-0050

May 5, 2003

Norma J. Wise, Director
James J. Lunsford Law Library
501 E. Kennedy Boulevard – Suite 100
Tampa, FL 33602

Re: Your letter of May 1, 2003

Dear Ms. Wise:

Your letter of May 1, 2003 has clarified to me that there is no specific policy which forbids any patron of the library from bringing in a personal copy device to make copies. Your speaking with Sandra Kellaher, and at her suggestion this matter being put on the agenda for the next Board meeting, further clarifies to me that there is no specific policy which forbids any patron of the library from bringing in a personal copy device to make copies.

As I had told you on the telephone, I am not looking for an individual exception. I resent your having implied such of me. Your argumentative attitude over the telephone causes me to question your motives. Your blanket "can do no wrong" attitude of your desk clerk causes a raising of my eyelids! Your conclusions about reduced revenue and book/subscription cutbacks are unsubstantiated, and just made up by you!

I have questions of the coin deposits made by library patrons into the copy machines. You have alerted me to have concern about accounting for the deposits of this cash. Do you or your desk clerks collect the cash from the copy machines? I ask this because you have impressed on me that the cash generated by the copy machines is immense. With such a lucrative flow of cash monies, substantial amounts of theft could go undetected and even unsuspected. What policies or procedures prevent this theft. How would the Library Board know if cash is being pocketed from the copy machines?

Please provide me with answers to my questions in a written letter. I have a genuine concern about how public funds are being utilized and wasted at the law library. Is that pay for cable television that your desk clerk watches while working the desk?

Sincerely,

Dennis Hunt

Dennis Hunt

Cc: Sandra M. Kellaher

EXHIBIT
3

-----Original Message-----
From: Norma Wise [mailto:WiseN@hillsboroughcounty.org]
Sent: Monday, May 19, 2003 11:43 AM
To: law-lib@ucdavis.edu
Subject: Public Access Libraries – Copiers

We have a situation where a patron wants to bring in his own copier/scanner, instead of using our coin operated machines. Revenue from our copiers is a significant part of our budget, and we've had an unwritten policy to not allow this.

I was wondering if any other public access libraries have a policy on this (written or otherwise). If so, I would appreciate you sending it to me off list. Also, please let me know if copy revenue played a part in the decision to allow or not allow it.

Thanks in advance for your input.

Norma J. Wise, Director
James J. Lunsford Law Library
Hillsborough County
501 E. Kennedy Blvd - Suite 100
Tampa, FL 33602
email: wisen@hillsboroughcounty.org
phone: (813) 272-5818
fax: (813) 272-5226



**EXHIBIT**

tables

4

Dennis Hunt
14111 Mossy Glen Lane, #203
Tampa, FL 33613

Tele: (813) 975-0050

May 19, 2003

Norma J. Wise, Director          Fax:   (813) 272-5226
James J. Lunsford Law Library    Tele.  (813) 272-5818
501 E. Kennedy Boulevard – Suite 100
Tampa, FL 33602

Re: Your Evening Desk Clerk David Pilver

Dear Ms. Wise:

This letter is to notify you of a condition, likely to be injurious to myself, which your desk clerk David Pilver had begun on Wednesday May 14, 2003. I have worry of being injured by this condition. My written notice to you here, is an attempt to cause a ceasing of this condition.

David Pilver has begun to hand to me the books I request to view from behind the front desk, in a manner which could likely be injurious to myself. These books are thick in pages, have metal binders, and are heavy in weight. David Pilver stretches one arm out, with the book in one hand, at a level of height of my forehead or above.

I had requested 4, maybe 5 books at different times on the evening of May 14th. All of these books were handed to me by David Pilver, in the same injurious manner. I will not allow myself to be placed in this injurious condition on future visits. I will be vocal about this condition. If it persists. I will continue to use the library, and I will request any book I wish to view from behind the front desk

If David Pilver does not want to be disturbed while watching his television programs, he should sit inside your office with the television, and close the door.

Sincerely,

Dennis Hunt

Dennis Hunt

cc: Sandra M Kelleher
684-1911      Care of: Micheal Ginsburg
              Fax: 884-0911

EXHIBIT
5
tabbies

NORMA J. WISE, Director

(813) 272-5818
FAX (813) 272-5226

Minutes of the James J. Lunsford (Hillsborough County)
Law Library Board Meeting

Pursuant to notice duly given, The James J. Lunsford (Hillsborough County) Law Library Board
("Board") met on Monday, June 16, 2003, at 5:00 pm at the Law Library. Members present were
Sandra Kellsher, Theodore Taylor, Carlos Pazos, and Thomas Parnell. Michael Ginsberg was unable
to attend. Bill Spradlin, acting Director, acted as the Secretary of the meeting. Also present were Jim Lynch &
Rudy Haldermota from the County Attorney's office and Mr. Dennis Hunt, a patron concerned about being
allowed to bring in his own scanning device.

The Board was advised that not only did our pending legislation die in committee, but that the amendment to
Article V passed in a special session (S.B. 113A) which takes away all funding that the Library received from
court filing fees. Options as far as our funding are being researched, but at this time we are not sure where we
stand. There will be a budget workshop July 17, at which time we should know if the County will to continue to
fund the Library.

Rudy Haldermota from the County Attorney advised the Board & Mr. Hunt that pursuant to section 119.08
Florida Statutes, patrons are allowed to bring in their own duplicating devices. The same section allows for a
charge to be levied, but at this time the Board has decided not to pursue this.

There being no further business to come before the meeting, the same was, upon motion duly made,
seconded and passed adjourned at 6:00 pm.

*Bill C. Spradlin*
Bill C. Spradlin

Acting Ex Officio Secretary to the Board

**EXHIBIT**
6

tabbies

Dennis Hunt
14111 Mossy Glen Lane, #203
Tampa, FL 33613

Telc: (813) 975-0050

July 3, 2003

Norma J. Wise, Director          Fax:  (813) 272-5226
James J. Lunsford Law Library    Tele:  (813) 272-5818
501 E. Kennedy Boulevard – Suite 100
Tampa, FL 33602

Re: <u>Your Evening Desk Clerk David Pilver</u>

Dear Ms. Wise.

This letter is to advise you of the confrontational behavior of your desk clerk David Pilver on <u>Tuesday July 1, 2003</u>. Mr. Pilver confronted me just prior to my exiting the library that evening. He blocked my way and demanded: "Mr. Hunt, what are you doing in the Library after 8 PM!" I told him that it was obvious that I was on my way out.

Mr. Pilver insisted on continuing argument with me. I asked him to move out of my way so that I could exit. He said that I was trespassing and kept repeating: "Mr. Hunt, are you announcing that you are refusing to leave the library?" I asked Mr. Pilver if he was going to bring in a gun next time and order me out at gun point. I exited the library at 8:02 PM.

As I drove from parking space I noticed Mr. Pilver in the front of the County Center building talking to sheriff deputies. I parked and went in the County Center lobby as Mr. Pilver was heading back towards the library. I spoke with the sheriff deputies' and told them of my having past problems with Mr. Pilver and of making past complaint of him. One deputy said that Mr. Pilver wanted to know what to do about someone in the library that was refusing to leave. I told the deputy of my encounter with him.

I do believe that David Pilver is ill suited for the position of desk clerk at the law library. Mr. Pilver does not want to be disturbed while watching his television programs. I would suggest that he may do better and be happier working in a video rental store. That way, he could always rewind, after having to bother with the annoying customers.

Sincerely,

Dennis Hunt

Dennis Hunt

cc: Sandra M. Kelaher    fax. 684-1911
Care of: Micheal Ginsburg
Fax: 884-0911

EXHIBIT
7

Page: 4
For: SAOCL

TAMPA PD
GENERAL OFFENSE HARDCOPY

GO 2003-294057

Tue, Jul. 22 2003

9000 - 928 TRES-OCC STRU/CONVE

Author: 46178 - HATHCOX, CHARLES
Related date/time: Jul-05-03 1540

ON THE LISTED DATE AND TIME, I RESPONDED TO 501 KENNEDY BLVD E REFERENCE TO
THE DEFENDANT TRESPASSING.  UPON MY ARRIVAL, I MET WITH THE COMPLAINANT AND
OBTAINED HIS STATEMENT.  I THEN MET WITH THE DEFENDANT WHO IDENTIFIED
HIMSELF WITH A FLORIDA DRIVER'S LICENSE.  THE COMPLAINANT VERBALLY ADVISED
THE DEFENDANT IN MY PRESENCE THAT HE WAS NO LONGER WELCOME IN THE LIBRARY,
AND HE WAS TRESPASSED FROM THE PREMISES.  THE DEFENDANT STATED HE WAS NOT
GOING TO LEAVE, AND THAT HE WAS GOING TO STAY UNTIL 5 P.M. BECAUSE HE IS
WORKING ON A CASE.  I ADVISED THE DEFENDANT IF HE DID NOT LEAVE THE LIBRARY
HE WOULD BE ARRESTED FOR TRESPASS AFTER WARNING.  THE DEFENDANT STILL
REFUSED TO LEAVE THE LIBRARY, AND STATED IF I ARRESTED HIM HE WOULD SUE THE
TAMPA POLICE DEPARTMENT AND THE LIBRARY.  THE DEFENDANT WAS TAKEN INTO
CUSTODY AND ESCORTED OUT OF THE LIBRARY.  I ISSUED THE DEFENDANT A NOTICE T
APPEAR (DIV.-E 08/04/03 0800HRS RM#21) FOR TRESPASS AFTER WARNING, AND
ISSUED HIM ANOTHER TRESPASS WARNING FROM THE LIBRARY.  THE TRESPASS WARNING
WAS TURNED INTO EVIDENCE AT THE TPD D-1 STATION.

Continued ...



EXHIBIT
8

# Office of the County Attorney

Fredelina C. Bacon, County Attorney
Charlotte M. Rich, Chief Assistant
Donald R. Wise, Chief Assistant
Bernard J. Davis, Chief Assistant
Jennifer Crawford Tiu, Chief Assistant

Penelope (Baty) Rauch, Legal Office Administrator



**Hillsborough County**
**Florida**

County Center
601 E. Kennedy Blvd – 27th Floor

Mailing Address
P.O. Box 1110
Tampa, Florida 33601
(813) 272-5670
Fax (813) 272-5241

November 12, 2003

Mr. Dennis Hunt
14111 Mossy Glen Lane
#203
Tampa, Florida 33613

      Re:    Public Records Requests
              James J. Lunsford (Hillsborough County) Law Library

Dear Mr. Hunt;

      This letter is in response to your public records request dated November 7, 2003. The Law Library has no written or non-written policies concerning "trespass warnings" or "enforcement of trespass warnings". These are criminal matters and are handled by law enforcement. Regarding the computer diskette, I informed you when you came to my office several months ago that the disk would be available for pick up the following Wednesday. I still have the diskette in my office – please let me know if you prefer me to mail it to you (there is a $10.00 charge for the diskette).

      I have requested the Payroll Department and Human Resources for a copy of the names and titles of Law Library employees and the information concerning days and time periods the employees worked at the Law Library during the time period you specified. The Law Library employees abide by the general policies and procedures that apply to all county employees. The Civil Service Rules contain 136 pages, for a cost of $20.40. The Human Resources Policies and Procedures are 217 pages in length, for a cost of $32.55. Please let me know if you want a copy of these documents.

                        Sincerely,

                        Mary Helen Campbell

                        Mary Helen Campbell, General Counsel

Cc:    Donald R. Odom, Interim County Attorney
       Norma J. Wise, Director,
           James J. Lunsford (Hillsborough County) Law Library

**EXHIBIT**
**9**