# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DENNIS HUNT,

                Plaintiff,               Case No: 8:07-CV-1168-T-30TBM
                                       **Partially Dispositive Motion**

vs.

LAW LIBRARY BOARD,
NORMA J. WISE,
and DAVID L. PILVER,

                Defendants.

_____/

## DEFENDANT LAW LIBRARY BOARD'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW Defendant Law Library Board (herein, "Library") through its undersigned counsel and files its Motion for Summary Judgment.

### Factual Background

Plaintiff (herein, "Hunt") was a patron of the Hillsborough County Law Library (herein, "Library") in 2003. Pilver was and is an employee of the Library. This lawsuit involves the interactions in the Library between Hunt and Pilver in early- to mid-2003 during times when the Library delegated authority to Pilver to take actions in response to Hunt's threatening behavior.

In Count I of his Complaint, Hunt claims that the Library is liable to him under 42 U.S.C. §1983 for violating "Plaintiff's First Amendment rights by barring him from the law library,…" (¶ 62 of the Complaint).

Dockets.Justia.com

In Count IV of his Complaint, Hunt claims that the Library is also liable to him because Hunt believes he was removed from the Library without due process of law, violating his rights to procedural and substantive due process.

Plaintiff seeks damages from the Library in Count I and Count IV. Plaintiff also seeks an injunction against the Library.

## Summary of Arguments

The Library is entitled to summary judgment on the strength of three arguments. First, Plaintiff has failed to identify a custom or policy adopted and practiced by the Library that confers liability under Section 1983. Second, Plaintiff's claims are both "*Heck*-barred" and precluded by the *Rooker-Feldman* doctrine. Third, Plaintiff's claims for injunctive relief are not justiciable, as his request for prospective relief lacks a ripened claim.

## Undisputed Facts

The disputed and undisputed facts were discussed in detail in Pilver's Motion for Summary Judgment, filed separately (**Doc. 28**). The factual recitation within Pilver's Motion is incorporated herein for all purposes and, in the interest of avoiding unnecessary redundancy, will not be repeated here.

## Argument 1:  No Custom or Policy

Plaintiff claims in his Complaint that the Library "imposed a deliberate and unconstitutional policy to bar Plaintiff from entering the" Library. (¶54 of Plaintiff's Complaint). Two sentences later, Plaintiff notes that, *"[d]espite no written or unwritten policy*, Plaintiff remains barred...from entering the ...Library". (¶56 of Plaintiff's Complaint, emphasis supplied). There is, as Plaintiff notes, *no* Library policy or custom

that confers liability under Section 1983. See also, **Doc. 31,** Wise Depo. at 23 (Wise stated to Mr. Hunt in a letter on November 7, 2003 that "the Law Library has no written or unwritten policies concerning 'trespass warnings' or enforcement of trespass warnings").

The record reflects that the Library's delegation of authority to its subordinate employee, David Pilver, was limited to one and only one isolated decision by the Library Board's Chair, Sandra Kellaher. That decision was at follows: Kellaher told Pilver he was authorized to use his best judgment about the safety concerns posed by Mr. Hunt or anybody else and to handle things as he saw fit to protect himself or patrons from potentially violent behavior. (**Doc. 30,** Pilver Depo. at 117-119, 129-130; **Doc. 31,** Wise Depo. at 26).

Kellaher was only one of several members of the Library Board. As such, Kellaher's acts and decisions were "subject to meaningful administrative review" by the Library Board. Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997). Because they are "subject to meaningful administrative review," Kellaher's decisions do not constitute final policymaking authority and do not bind the Library for purposes of Section 1983. *Id.* *See also*, Denno v. School Board of Volusia County, 218 F.3d 1267, 1276 (11th Cir. 2000) (finding that a school administrator's decision to prohibit Confederate symbols was not made with "final policymaking authority").

Alternatively, even if Kellaher's acts were not subject to review by the Library Board, Kellaher's one-time delegation of authority to Pilver, intended solely to address Hunt's idiosyncratic and threatening behavior, did not rise to the level of a policy or custom as those terms are defined by Eleventh Circuit precedent.

A governmental entity such as the Library is only liable under Section 1983 when there is an official policy or custom that was "the moving force of the constitutional violation." Adams v. Manatee County Sheriff, 2008 U.S. Dist. LEXIS 76943 (M.D. Fla. 2008), citing to Monell v. Department of Social Services, 436 U.S. 658 (1978) and to Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1211 (11th Cir. 1993). That official policy or custom must be "so well settled and pervasive that it assumes the force of law." Denno, 218 F.3d at 1277, *citing to* Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). The Plaintiff must "show a 'persistent and widespread practice'" in order to prove the existence of a custom or practice. *Id*. "[n]ormally random acts or isolated incidents are insufficient to establish a custom.." Denno, 218 F.3d at 1277, *citing to* Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) and Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).

At bar there is no evidence that Kellaher's response to Hunt's actions was anything more than a one-time response to one patron's erratic behavior. Law Library Director Norma Wise testified that there was no precedent for Hunt's actions and the Library's response. (**Doc. 31**, Wise Depo. at 30-31).

The Library never made a decision to *permanently* remove Hunt from the Library. (**Doc. 31**, Wise Depo. at 9-10). The only decision at issue was a one-time decision to allow Pilver to remove Hunt if Pilver deemed it necessary to do so, taking into account the safety of patrons and employees. There was no decision made before this incident, and no decision made afterwards, by the Library, about removing Hunt. As such, as Plaintiff himself notes in his pleading, there was no policy or custom that can form the basis for Section 1983 relief.

**Argument 2:** *Heck v. Humphrey* **and/or the** *Rooker-Feldman* **Doctrine**

 **a.**   *Heck v. Humphrey*

Heck v. Humphrey, 512 U.S. 477 (1994), was brought by a state prisoner under §

1983. The lawsuit challenged the conduct of state officials who, the prisoner claimed,

had caused his conviction by improperly investigating his crime and destroying evidence.

*Id.* at 479. The Supreme Court noted that "civil tort actions are not appropriate vehicles

for challenging the validity of outstanding criminal judgments", *Id.* at 486, and held that

where "establishing the basis for the damages claim necessarily demonstrates the

invalidity of the conviction," *Id.* at 481-482, the § 1983 action would not lie "unless…the

conviction or sentence had already been invalidated." *Id.* at 487.

  The applicability of Heck was reviewed and analyzed by Magistrate Judge

McCoun in Abusaid v. Hillsborough County, 2007 U.S. Dist. LEXIS, 65813 (M.D. Fla.

2007). Abusaid had been convicted in state court for violations of Hillsborough County's

"Rave" ordinance, and, subsequent to his conviction and after serving his sentence, filed

suit against the County under § 1983. Judge McCoun held that, regardless of the timing

of Plaintiff's conviction and sentence, the damages portion of Abusaid's claims were

barred by Heck ("a declaration that the [Rave] Ordinance is unconstitutional together

with an award of damages... would necessarily imply the invalidity of his convictions."

*Id.* at *37).

  As Hunt admitted in his deposition, he believes that if he prevails in the lawsuit at

bar, the result at bar will imply that he should not have been convicted of trespassing in

his state criminal case. (**Exh. 2**, Hunt depo. at 22-23). Based on the foregoing, Heck

specifically bars the damages claims at bar:

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. [cite omitted] A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."

Heck, 512 U.S. at 486-87.

In addition to precluding Plaintiff's damages claim, one Eleventh Circuit panel has noted that Heck also bars a claim for injunctive relief where a plaintiff cannot "show that the relief will not 'necessarily imply' the invalidity of his conviction..." Koger v. State of Florida, 130 Fed. Appx. 327, 333 (11th Cir. 2005), *citing to* Edwards v. Balisok, 520 U.S. 641, 648 (1997). As noted previously, Hunt himself believes (as he testified) a favorable resolution at bar would imply the invalidity of his conviction, so Hunt will not be able to prove otherwise in this case. Accordingly, all of his claims are "*Heck*-barred."

**b.** ***Rooker-Feldman***

The *Rooker-Feldman* doctrine applies the holdings of Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). "The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." Siegel v. Lepore, 234 F.3d 1163, 1172 (11th Cir. 2000). "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with the state court's judgment." Siegel, 234 F.3d at 1172; Wood v. Orange County, 715 F.2d 1543, 1546 (11th Cir. 1983). "A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'"

Siegel, 234 F.3d at 1172, *citing to* Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25

(1987)(Marshall, J., concurring).

Hunt's appeal of his criminal conviction not only addressed issues "inextricably

intertwined" with those at bar, but addressed *precisely the same* legal issues that are at

issue at bar.  In Plaintiff's Initial Brief on appeal (**Exh. 1**), Plaintiff stated one of the

relevant issues on appeal, in part, as follows:

> "ISSUE ONE.  WHETHER THE TRIAL COURT ERRED IN DENYING THE
> APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL THAT
> ALLEGED THE LIBRARY VIOLATED THE APPELLANT'S FIRST
> AMENDMENT RIGHTS WHEN THE LIBRARY TRESPASSED THE
> APPELLANT ON JULY 5, 2003, …?"

**Exh. 1** at 11; see also, the State's Answer brief (**Exh. 2**) and the state appellate Court's

order affirming the decision below (**Exh. 3**).

On appeal in state court was the question of whether Hunt's First Amendment

rights were violated by the Library.  The Court, by "affirming" the decision below,

resolved the issue in the negative.  A contrary ruling by the Court at bar would create

conflicting results and would cloud the state criminal court's resolution of the question

regarding whether Plaintiff's First Amendment rights were violated.


**Argument 3:  Plaintiff Lacks a Justiciable Claim for Injunctive Relief**

Plaintiff seeks an injunction to prevent violation of his rights "in the future".  (see

"WHEREFORE" clauses to Counts I and IV of the Complaint).  By definition, Plaintiff

seeks generalized "prospective" relief.  There is no allegation of an "imminent and

concrete threat of future injury" that is one of the requirements of justiciability.  Elend v.

Basham, 471 F.3d 1199, 1205 (11th Cir. 2006).

Elend involved protesters demonstrating at a speech by President Bush. The protesters were told to move their demonstration to a "First Amendment Zone" marked out for the event. When Plaintiffs refused to relocate their demonstration, Sheriff's deputies arrested them for "trespass after warning." _Id._ at 1203. Plaintiffs sued, seeking among other things an injunction against "any further constitutional violations." _Id_ at 1203. The Eleventh Circuit concluded that Plaintiff lacked the prudential and constitutional requirements of standing, primarily because he could not show "a real and immediate threat of future harm." _Id._ at 1207, citing to <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983). _See also_, <u>Bowen v. First Family Fin. Svcs</u>, 233 F.3d 1331, 1340 (11th Cir. 2000)(observing that a 'perhaps or maybe chance' of an injury occurring is not enough for standing").

At bar, there is a complete absence of any "real and immediate threat of future harm." The Library has not addressed Mr. Hunt's issues since 2003, when Kellaher authorized Pilver to take action to protect patrons and employees as he saw fit. Since then, at the conclusion of Hunt's first criminal trial for trespass, Judge Nazaretian stated to Hunt:

> "maybe we need to quit fighting the system and just get along and then maybe if you can talk to the Board of Directors at this place – at the library, if you all can get together and apologize and everything, you can go back and study some more. I mean, it seems a shame to keep you out of the library, but that's what I have to do right now because of the ongoing problem. I hope you can work something out with the Board of Directors which would allow you to go back and do that."

**Doc. 28-3, p. 52** (Transcript of Trial, October 15, 2003, at 50).

Rather than taking Judge Nazaretian's advice of over 5 years ago, Hunt has yet to approach the Board of Directors about apologizing and returning to the Library. Hunt

cannot show any "real and immediate threat of future harm" unless he actually takes action and presents his query to the Law Library Board[1].

In this context, any alleged residual effects following the 2003 incident cannot form the basis for a claim of "real and immediate threat of future harm," because "[p]ast exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief...if unaccompanied by any continuing, present adverse effects." Elend, 471 F.3d at 1207, citing to Lyons, 461 U.S. at 102 and O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

**Conclusion**

The Library is entitled to summary judgment on several grounds.  First, Hunt cannot point to any Library policy or custom that confers liability under Section 1983. Second, Hunt's damages claims are barred by the Heck doctrine.  The Rooker-Feldman doctrine requires that this Court defer to the state criminal appeal for its resolution of the constitutional issues at bar.  Finally, Hunt's request for injunctive relief is not justiciable because there is no demonstrable or arguable "real and immediate threat of future harm."

Respectfully,

Stephen M. Todd
Senior Assistant County Attorney
Florida Bar No.  0886203
Hillsborough County Attorney's Office
Post Office Box 1110
Tampa, Florida  33601-1110

---

[1] Notably, once previously Hunt took a grievance to the Law Library Board, when he wanted to use his personal copy machine rather than pay the Library for copies.  (**Doc. 31**, Wise Depo., **p. 42** at **Exh. 13**).  The Board approved his request.

(813) 272-5670
Fax (813) 272-5758
todds@hillsboroughcounty.org
Attorney for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served upon **Dennis Hunt, via e-mail to *huntdennis2007@yahoo.com*,** and via U.S. mail to 2319 Nantucket Drive, Sun City Center, FL 33573, on this 24th day of March 2009.

Stephen M. Todd

Exhibit 1 to
Law Library's Motion for Summary Judgment

# IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

## APPELLATE DIVISION

DENNIS HUNT, Appellant,

vs.

STATE OF FLORIDA, Appellee.



SCANNED

---

APPEAL CASE NO.: 2005-13140

LOWER CASE NO.: 2003-CM-018502A

---

## INITIAL BRIEF OF THE APPELLANT

JEFFREY SULLIVAN
Florida Bar No. 0009814
Post Office Box 9000-RC2
Bartow, Florida 33831-9000
Telephone: (863)534-3689
*Specially appointed criminal conflict counsel*

# TOPICAL INDEX TO BRIEF

PAGE NO.

STATEMENT OF THE CASE                                    1

STATEMENT OF THE FACTS                                   3

SUMMARY OF THE ARGUMENT                                  10

ARGUMENT

ISSUE ONE                                                11

**WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL THAT ALLEGED THE LIBRARY VIOLATED THE APPELLANT'S FIRST AMENDMENT RIGHTS WHEN THE LIBRARY TRESPASSED THE APPELLANT ON JULY 5, 2003, AT A TIME WHILE HE WAS NOT DOING ANYTHING WRONG OR BEING DISRUPTIVE?**

ISSUE TWO                                                17

**WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL THAT ALLEGED THAT THE EVIDENCE FAILED TO DEMONSTRATE THAT THE LIBRARY ACTED REASONABLY IN TRESPASSING THE APPELLANT ON JULY 5, 2003?**

CONCLUSION                                               20

CERTIFICATE OF COMPLIANCE                                20

CERTIFICATE OF SERVICE                                   20

# TABLE OF CITATIONS

**CASES**                                                                  **PAGE**

*Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)     15

*Armstrong v. District of Columbia Public Library,*                          12,14
    154 F.Supp.2d 67 (D.D.C.,2001)

*Brown v. Louisiana,* 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966)     11

*Concerned Women for America, Inc. v. Lafayette County,*                     13
    883 F.2d 32 (5th Cir.1989)

*Goldstone v. Bloomfield Township Public Library,*                           14
    737 N.W.2d 476 (Mich.2007)

*Gregory v. Chicago,* 394 U.S. 111, 118, 89 S.Ct. 946,                       14
    22 L.Ed.2d 134 (1969)

*Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678,                      12
    14 L.Ed.2d 510 (1965)

*International Soc. for Krishna Consciousness, Inc. v. N.J. Sports and*       12
    *Exposition Authority,* 691 F.2d 155 (3d Cir.1982)

*Jones v. State,* 790 So.2d 1194 (Fla. 1st DCA 2001)(en banc)                11,17

*Kreimer v. Bureau of Police for Town of Morristown,*                        12-13
    958 F.2d 1242 (3d Cir. 1992)

*Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862,                   12
    87 L.Ed. 1313 (1943)

*Pagan v. State,* 830 So.2d 792 (Fla.2002)                                   11,17

*Robinson v. State,* 936 So.2d 1164 (Fla. 1st DCA 2006)                      11,17

*Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)    12

*Travis v. Owego-Apalachin School District,* 927 F.2d 688 (2d Cir.1991)    13

## **OTHER AUTHORITIES**                                      **PAGE**

Florida Rules of Appellate Procedure 9.100(l)    20

Florida Rules of Appellate Procedure 9.210(a)(2)    20

Section 810.08, Florida Statutes (2003)    1

*The America I loved still exists, if not in the White House or the Supreme Court or the Senate or the House of Representatives or the media. The America I love still exists at the front desks of our public libraries*. ~Kurt Vonnegut, *In These Times*, Aug. 6, 2004.

## STATEMENT OF THE CASE

On July 3, 2003, the Appellant, Dennis Hunt, was arrested for the crime of trespass after warning, a violation of section 810.08, Florida Statutes (2003). The arrest affidavit indicated that the Appellant failed to leave the Hillsborough County Law Library after being warned that he was trespassing. (V1–R7-8). Trespass after warning is a first-degree misdemeanor.

The Appellant had a non-jury trial on October 15, 2003. (V1–R10-11). A motion for new trial was granted at some point in time which is unclear in the record. Subsequently, a jury trial was held on June 8, 2005.

At the close of the state's case, the Appellant moved for a judgment of acquittal. The Appellant argued that he did nothing wrong on July 5 when he received the trespass warning and the library violated the Appellant's First Amendment rights. The Appellant also argued that the testimony presented established that if the Appellant did nothing wrong on July 5 that he should not

have been kicked out of the library. Finally, the Appellant argued that the library did not act reasonably when it trespassed the Appellant on July 5. The trial court denied the motion. (V2–T104-107).

At the close of all the evidence, the Appellant renewed all his motions. The trial court denied the motions again. (V2–T139-140).

The jury found the Appellant guilty as charged on June 8, 2005. (V2–T185). On the same date, the trial court withheld adjudication and imposed a court cost of $435.00. (V2–T189-192).

The Appellant filed a timely notice of appeal on June 28, 2005. (V1–R56). This appeal follows.

*There is not such a cradle of democracy upon the earth as the Free Public Library, this republic of letters, where neither rank, office, nor wealth receives the slightest consideration.* ~Andrew Carnegie (Industrialist, businessman, and philanthropist)

## STATEMENT OF THE FACTS

David Pilver is a senior library assistant for the Hillsborough County law library in Tampa. He has been working there for nine years. (V2–T68). Pilver is responsible for shelving books and other clerical-type jobs, and he assists patrons with research requests. Part of Pilver's job is to close the library on nights that he works. (V2–T69).

On July 1, 2003, at 8:00 p.m., Pilver was closing the library. (V2–T70). Pilver testified that, at that time, he was familiar with the Appellant because he had seen the Appellant doing research in the library on previous occasions. Pilver knew that the Appellant had made several complaints about how the library was being run. In fact, the Appellant had made complaints directly to Pilver in the past. (V2–T71).

Pilver knew that the Appellant was still inside the library so he waited until it was a few minutes past 8:00 p.m. to go look for the Appellant. (V2–T70-71).

Pilver found the Appellant and asked him why he was still in the library after closing time. According to Pilver, the Appellant became furious and started shouting at Pilver. (V2–T72). The Appellant told Pilver that "You didn't give me the proper announcement." Then, the Appellant asked Pilver what was he going to do about it if the Appellant did not leave. The Appellant was shouting and waving his arms all around. The Appellant had an "aggressive posture." Pilver thought the Appellant was going to physically attack him. (V2–T73). According to Pilver, the Appellant said "God dammit, what do you fucking think you're doing? You don't know who you're messing with. You're messing with the wrong guy." (V2–T74).

Finally, the Appellant told Pilver that he could not leave because Pilver was in his way. (V2–T73). When the Appellant left the library, Pilver went across the street and spoke to county security officers about the incident. (V2–T74). The security personnel told Pilver that they would be happy to help him escort anyone out of the building that was refusing to leave or that he did not feel comfortable with being there. (V2–T75).

Pilver testified that by 8:15 p.m. on July 1, the Appellant had left the building. (V2–T85).

Pilver wrote a letter to his boss, Norma Wise, explaining what had happened between the Appellant and him. Pilver stated in the letter that he did not feel

comfortable with the Appellant coming into the library anymore. He discussed changing his schedule so he would not encounter the Appellant in the future. (V2–T76).

Pilver was told that he could use his own judgment to determine what level of threat the Appellant posed. If Pilver did not feel comfortable with the Appellant being there, he was told he could ask to have the Appellant removed. (V2–T77).

Pilver did not work again until July 5. At approximately 3:30 p.m., the Appellant came into the library. Pilver called security and several officers came over to the library. (V2–T79). The officers told the Appellant that he needed to leave the building. The Appellant refused to leave. The officers told the Appellant that they would call Tampa Police and have him arrested if he did not leave. (V2–T79).

Eventually, a Tampa Police Officer arrived at the library. Pilver spoke to the officer and then walked with the officer to the Appellant. Pilver told the Appellant that he was not welcome in the library and that Pilver wanted him to leave. Pilver told the Appellant that he did not feel that the Appellant was a safe person to have around based upon the previous altercation. (V2–T80-81).

The Appellant went to retrieve his materials and belongings. Then, Pilver saw the officer escort the Appellant out of the library and place him into the police

car. (V2–T81).

According to Pilver, the Appellant had been using the library for two to three months prior to July 1. The Appellant had never been violent before the incident on July 1. (V2–T82). On July 5, when Pilver called security, the Appellant was doing research and minding his own business. (V2–T84).

The Appellant made five or six complaints against Pilver. He complained about the manner in which Pilver passed book to the Appellant. (V2–T82). On one occasion, Pilver told the Appellant that he could not bring his personal copier into the library. The Appellant stopped using his own copier until the library board told the Appellant that he was allowed to use his own copier. (V2–T83). The Appellant filed a written complaint about Pilver's behavior on July 1. (V2–T83).

Sandra Kellaher is an attorney and is the former chairperson of the Hillsborough County law library. She was the chairperson on July 1, 2003 and July 5, 2003. (V2–T89-90).

Kellaher is aware of two complaints that the Appellant made against the library. One was that the Appellant was prohibited from bringing his own copier into the building. The second was that Pilver slammed books in front of the Appellant when the Appellant requested books. (V2–T93).

Kellaher told Pilver that if he felt unsafe because of any patron then he

should call security for his protection. (V2–T92). She told Pilver to use common sense before making any such phone calls. Kellaher had the impression that Pilver felt threatened by the Appellant. (V2–T98).

Kellaher testified at trial that if the Appellant came into the library, minded his own business, and did research, he should not be kicked out of the library. (V2–T97).

Tampa Police Department Officer Charles Hathcox was sent to the library to investigate a trespassing complaint. (V2–T99-100). Hathcox met with Pilver and then the two of them confronted the Appellant. Pilver asked the Appellant to leave. The Appellant said he would leave at closing time. (V2–T101).

Hathcox told the Appellant that because he was trespassed in his presence that the Appellant needed to leave or he would be arrested. The Appellant threatened to sue the police department and the library if he was arrested. Hathcox told the Appellant two or three times that he would be arrested if he did not leave. The Appellant refused to leave, so Hathcox arrested him and escorted him out of the building. (V2–T102).

The Appellant was not belligerent toward Hathcox or Pilver. Hathcox did not need to drag the Appellant out of the library. He was not yelling or screaming. (V2–T103).

The Appellant testified that he had been using the law library for nearly a year at the time he was arrested. (V2–T110). The Appellant made several complaints against Pilver because he became abusive toward the Appellant. Pilver was disrespectful. According to the Appellant, Pilver handed books to the Appellant in an aggressive manner. Pilver also told the Appellant he could not use his own copier. However, the board of directors of the library told the Appellant that he had the right pursuant to Florida law to use his own copier. (V2–T111-112).

The Appellant made the complaint about the copier on April 30, 2003. The board gave him approval to use his own copier in mid-June 2003. (V2–T113).

The Appellant complained about Pilver's behavior on July 1. He said Pilver was aggressive toward him. (V2–T113). According to the Appellant, Pilver made an announcement informing the patrons that the library would close in fifteen minutes. However, Pilver did not make an announcement stating the library would close in five minutes, as he typically did. The Appellant did not have a watch, so he went to the front of the library to see the only clock. When he realized it was 7:58 p.m., the Appellant went back to his materials and started packing them away. Pilver walked up to the Appellant and asked him in an aggressive tone, "Mr. Hunt, what are you doing in the library after closing time?" The Appellant told

Pilver that he did not give a five minute announcement. Pilver told the Appellant that "I don't have to give any five minute announcement." (V2–T115-117).

Pilver told the Appellant that it is after closing time and he was trespassing. (V2–T118). The Appellant motioned with his hand and said "Now move aside. You're blocking my egress." The Appellant left the building. (V2–T118). The Appellant denied swearing at Pilver or threatening him in any manner. (V2–T119).

On July 5, the Appellant saw Pilver at the law library. He decided to ignore Pilver because the Appellant's work was too important to him to be bothered with Pilver. (V2–T120). The Appellant believes that Pilver does not like him. (V2–T121).

The Appellant is 5'8" and weighs 200 pounds. (V2–T131). The Appellant did not become angry or raise his voice to Pilver on July 1. (V2–T132).

*Perhaps no place in any community is so totally democratic as the town library. The only entrance requirement is interest.* ~Lady Bird Johnson (Wife of former U.S. President Lyndon B. Johnson)

## SUMMARY OF THE ARGUMENT

The trial court erred in denying the Appellant's motion for judgment of acquittal because the library violated the Appellant's constitutional rights when it trespassed him from the library on July 5, 2003, at a time when the Appellant was using the library for its intended purpose and was not being abusive, disruptive or combative.

The trial court also erred in denying the Appellant's motion for judgment of acquittal because the evidence failed to prove that the library acted reasonably when it trespassed the Appellant on July 5, 2003.

*A library is not a luxury but one of the necessities of life.* ~Henry Ward

Beecher (American clergyman and abolitionist)

## ISSUE ONE

**WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL THAT ALLEGED THE LIBRARY VIOLATED THE APPELLANT'S FIRST AMENDMENT RIGHTS WHEN THE LIBRARY TRESPASSED THE APPELLANT ON JULY 5, 2003, AT A TIME WHILE HE WAS NOT DOING ANYTHING WRONG OR BEING DISRUPTIVE?**

This Court must "review *de novo* the trial court's denial of a motion for judgment of acquittal, to determine solely whether the evidence is legally sufficient. *See Pagan v. State,* 830 So.2d 792, 803 (Fla.2002); *Jones v. State,* 790 So.2d 1194, 1196 (Fla. 1ˢᵗ DCA 2001)(en banc)." *Robinson v. State*, 936 So.2d 1164, 1166 (Fla. 1ˢᵗ DCA 2006).

At the close of the evidence, the Appellant argued that the Appellant's First Amendment rights were violated when the library trespassed him at a time when he was doing nothing wrong and was not being disruptive. (V2–T104-107). The trial court denied the motion. (V2–T107).

"A library is 'a place dedicated to quiet, to knowledge, and to beauty.' *Brown v. Louisiana,* 383 U.S. 131, 142, 86 S.Ct. 719, 724, 15 L.Ed.2d 637 (1966).

Its very purpose is to aid in the acquisition of knowledge through reading, writing and quiet contemplation." *Kreimer v. Bureau of Police for Town of Morristown,* 958 F.2d 1242, 1261-1262 (3d Cir.1992).

A person has the constitutional right of access to a public library. It is well-established and can hardly be disputed that "the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 482-483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *see also Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1256 (3d Cir.1992)(*citing Martin v. City of Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943)("This right, first recognized in *Martin* and refined in later [F]irst [A]mendment jurisprudence, includes the right to some level of access to a public library, the quintessential locus of the receipt of information."))." *Armstrong v. District of Columbia Public Library*, 154 F.Supp.2d 67, 75 (D.D.C.,2001).

A person's constitutional right of access to a public library is not absolute and may be limited. This is so because a library is not an absolute public forum. In *Kreimer v. Bureau of Police for Town of Morristown,* 958 F.2d at 1262, the Court held that "the exercise of other oral and interactive First Amendment activities is antithetical to the nature of the Library . . . [and therefore] . . . a Library constitutes

a *limited* public forum, a sub-category of designated public fora." *See also,*
*International Society for Krishna Consciousness, Inc. v. New Jersey Sports and*
*Exposition Authority,* 691 F.2d 155, 160 (3d Cir.1982) (indicating in dictum that a
public library is a limited public forum under *Brown v. Louisiana,* 383 U.S. at 131,
86 S.Ct. at 719) and *Concerned Women for America, Inc. v. Lafayette County,* 883
F.2d 32, 34 (5th Cir.1989) (district court's injunction based on its determination
that public library constituted a public forum was not abuse of discretion).

A limited public forum "is created when government opens a nonpublic
forum but limits the expressive activity to certain kinds of speakers or to the
discussion of certain subjects.... In the case of a limited public forum,
constitutional protection is afforded only to expressive activity *of a genre similar*
*to those that government has admitted to the limited forum.*" (emphasis supplied).
*Travis v. Owego-Apalachin School District,* 927 F.2d 688, 692 (2d Cir.1991).

Courts have held that because a library is a limited public forum, a library
"is obligated only to permit the public to exercise rights that are consistent with
the nature of the library and consistent with the government's intent in designating
the library as a public forum. Other activities need not be tolerated." *Kreimer,* at
1262.

As a general propositions, the Constitution permits states to regulate against

trespass and disruptive conduct in public buildings such as schools, libraries and hospitals. *See, Gregory v. Chicago,* 394 U.S. 111, 118, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969).

In *Kreimer*, a homeless man was asked to leave a New Jersey public library pursuant to library rules that required patrons to be engaged in library activities, prohibited patrons from annoying other patrons, and prohibited access to patrons whose bodily hygiene was so offensive as to constitute a nuisance. *Id.* at 1268. After considering Kremier's facial challenge to the constitutionality of these rules, the Third Circuit reversed the district court finding and upheld all the regulations at issue, including the library's hygiene regulation, which the circuit found to be narrowly tailored.

A different court found a similar regulation unconstitutionally broad in *Armstrong v. District of Columbia Public Library*, 154 F.Supp.2d 67 (D.D.C. 2001). In *Armstrong*, the court held that the library's regulation instructed library personnel to deny access to patrons with "objectionable appearance" was vague and overbroad because the term "objectionable appearance" had no legal standard nor a specific definition.

In *Goldstone v. Bloomfield Township Public Library*, 737 N.W.2d 476 (Mich.2007), a court held that the township library's policy of not offering

nonresident book-borrowing privileges did not violate the First Amendment. The court stated that such a policy was a reasonable way to achieve the library's purpose of creating a viable means of establishing and maintaining a local public library. Also, the decision noted that Goldstone was allowed to enter and use the library, the only restriction as a nonresident was that he could not borrow books.

Thus, under applicable case law, libraries may limit a person's activities once inside the library. However, case law is clear that any such regulations and rules must be narrowly tailors not to run afoul of one's constitutional right to access to a public library.

Such restrictions are consistent with limitations on First Amendment rights in other arenas. For example, courts will not entertain requests for permission to break the law in order to petition the government, as unlawful conduct is clearly not within the purview of First Amendment protections. *See, e.g., Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149, (1966)(People who want to propagandize protests or views do not have a constitutional right to do so whenever and however and wherever they please, and as a result, may be properly trespassed for blocking jail entrance not usually utilized by public).

In the instant case, there was no rule or regulation that the Appellant had broken or disobeyed. As a result, this case is not a challenge to some overbroad or

vague rule of the Hillsborough County law library. However, the analysis is similar. Just as a library cannot constitutionally enforce an overbroad rule or regulation that impedes one's access to the library, the Hillsborough County law library cannot constitutionally trespass the Appellant from the premises at a time when he is not being rude, disobedient, or disruptive to other patrons or employees. Such a "standing trespass decree" is not a narrowly tailored policy; just the opposite, it is a broad, blanket edict that infringes upon the Appellant's constitutional right to access the public library. A standing trespass order is unconstitutional.

Had the library given the Appellant a trespass warning on July 1, 2003, when he was allegedly being disruptive or threatening to David Pilver, and the Appellant refused to obey such a warning to leave, he very well could have been lawfully arrested for trespass under the cases cited above. However, the Appellant was not given any type of warning on July 1. He simply left voluntarily after the encounter with Mr. Pilver. It was on July 5, when the Appellant merely walked into the library, that he was asked to leave. If the Appellant was not breaking any rule and was not disturbing patrons or employees with his conduct, then the Appellant had an unfettered constitutional right to remain inside the library.

When the Appellant was asked to leave on July 5, the library violated the

Appellant's constitutional rights. The trial court erred by denying the motion for judgment of acquittal. This Court should vacate the jury's verdict and discharge the Appellant.

## ISSUE TWO

**WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL THAT ALLEGED THAT THE EVIDENCE FAILED TO DEMONSTRATE THAT THE LIBRARY ACTED REASONABLY IN TRESPASSING THE APPELLANT ON JULY 5, 2003?**

This Court must "review *de novo* the trial court's denial of a motion for judgment of acquittal, to determine solely whether the evidence is legally sufficient. *See Pagan v. State,* 830 So.2d 792, 803 (Fla.2002); *Jones v. State,* 790 So.2d 1194, 1196 (Fla. 1st DCA 2001)(en banc)." *Robinson v. State*, 936 So.2d 1164, 1166 (Fla. 1st DCA 2006).

At the close of the evidence, the Appellant argued that the evidence failed to establish that the library acted reasonably when it trespassed the Appellant on July 5, 2003. (V2–T106-107). The trial court denied the motion. (V2–T107).

The trial court instructed the jury that the state had to prove the following four elements to establish the crime of trespass in an occupied structure after warning:

(1) The Appellant willfully remained;

(2) In a structure of another;

(3) Without being authorized, licensed or invited to enter or remain in the structure, refusing to comply with a warning by a person authorized by owner to depart; and

(4) The Hillsborough County law library acted reasonably in trespassing the Appellant from the property.

(V2–T177).

The trial court also instructed the jury that "Access to a public library is a right protected by the United States and Florida constitutions. This right prohibits a public library from unreasonably trespassing someone from its property. This right does not prohibit a public library from trespassing someone from its property so long as the library acted reasonably." (V2–T178).

The only evidence presented that the Appellant was disruptive, combative or aggressive, at any time whatsoever, was presented by David Pilver. Assuming that Pilver's testimony was true, the fact remains that the Appellant's disruptive conduct occurred on July 1, 2003. There is absolutely no evidence that the Appellant was disruptive on July 5, 2003, the day he was arrested.

Pilver did not give a trespass warning to the Appellant on July 1. He waited

until July 5, when the Appellant was simply minding his business and using the library for the purpose for which it was created, doing research and reading materials.

There was no evidence presented that the library, through Pilver, acted reasonably on July 5, when it trespassed the Appellant. Had the Appellant acted in a disruptive manner on July 5, then perhaps the library's decision to trespass the Appellant might have been classified as reasonable. However, trespassing the Appellant, when there was only a single allegation of inappropriate conduct, cannot be deemed reasonable under any definition.

In fact, the former chairperson of the library testified that if the Appellant came into the library, minded his own business, and did research, he should not be kicked out of the library. (V2–T97). This testimony flies in the face of what happened in the instant case. The Appellant came into the library, minded his own business, and did research, yet *was* kicked out of the library. Testimony from the former chairperson of the library indicates that the library *did not* act reasonably on July 5.

As a result, the trial court erred by not granting the motion for judgment of acquittal that was predicated on the fact that the evidence demonstrated that the library failed to act reasonably because the Appellant did nothing wrong on July 5.

This Court should vacate the jury's verdict and discharge the Appellant.

## CONCLUSION

Based upon the arguments contained herein, the Appellant respectfully requests that this Court vacate the jury's verdict because the Appellant's judgment of acquittal should have been granted. The Appellant should be discharged and any monies paid by the Appellant toward his court costs should be refunded.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Appellant's motion has been typed in Times New Roman 14-point font pursuant to Florida Rules of Appellate Procedure 9.100(l) and 9.210(a)(2).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this motion has been mailed to The Honorable Daniel H. Sleet, 800 E. Kennedy Blvd., Room 121-Annex, Tampa, FL 33602 and Sean Keefe, Assistant State Attorney, 800 E Kennedy Blvd, Tampa, Florida 33602-4146 on this 16th day of JUNE 2008.

JEFFREY SULLIVAN
Florida Bar No. 0009814
Post Office Box 9000-RC2
Bartow, Florida 33831-9000
Telephone: (863)534-3689
*Specially appointed criminal*
*conflict counsel*

Exhibit 2 to
Law Library's Motion for Summary Judgment

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
CRIMINAL JUSTICE DIVISION

DENNIS HUNT

     Appellant,

                           Appeal No.: 05-CF-13140

VS.                              Lower Case No.: 03-CM-18502

STATE OF FLORIDA,

     Appellee.

_____/

ON APPEAL FROM THE COUNTY COURT OF THE THIRTEENTH JUDICIAL
CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
HONORABLE JUDGE THOMAS BARBER PRESIDING

## ANSWER BRIEF OF APPELLEE

Submitted By:

MARK A. OBER
STATE ATTORNEY
THIRTEENTH JUDICIAL CIRCUIT

John P. Johnson
Assistant State Attorney
800 East Kennedy Boulevard
Fifth Floor
Tampa, Florida 33602
813/272-5400

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................i

Preliminary Statement.........................................................................................................ii

Statement of the Case and Facts ....................................................................................ii

Argument

    **Issue: I**  **Whether The Trial Court Erred In Denying Defendant's Motion For Judgment Of Acquittal Based On Violation Of His First Amendment Rights?**...........................................................................1

    **Issue: II**  **Whether The Trial Court Erred In Denying Defendant's J.O.A. As It Was Not Reasonable To Trespass Him On July 5, 2003?**.........................................................................................1

Conclusion..........................................................................................................................4

Certification ........................................................................................................................4

# TABLE OF AUTHORITIES

**CASES**

Pagan v. State, 830 So.2d 792 (Fla. 2002)...........................................................1

Gregory v. Chicago, 394 U.S. 111 (1969)............................................................1

Brown v. Louisiana, 383 U.S. 131.142 (1966).......................................................1

Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, at 1263

(3d Cir. 1992).................................................................................................2

# PRELIMINARY STATEMENT

The record on appeal consists of one volume of court documents and two transcripts dated June 6, 2005 and June 8, 2005. All references to court documents will be shown with "R" followed by the page number. All references to the transcript will be shown with "T" followed by the page number.

Dennis Hunt, Defendant below, will be referred to as Appellant or Defendant.

State of Florida, Plaintiff below, will be referred to as Appellee or State.

# STATEMENT OF THE CASE AND FACTS

State accepts Appellant's statement of the case and facts. And the State accepts the quotations with a grain of salt.

## ISSUE I

## WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL BASED ON VIOLATION OF HIS FIRST AMENDMENT RIGHTS?

## ISSUE II

## WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S J.O.A. AS IT WAS NOT REASONABLE TO TRESPASS HIM ON JULY 5, 2003?

## STANDARD OF REVIEW

De Novo review of a trial court's denial of a motion for judgment of acquittal. Pagan v. State, 830 So.2d 792 (Fla. 2002).

## ARGUMENT

Appellant argues that his First Amendment Rights were violated when the library trespassed him as he was doing nothing wrong and was not being disruptive.

However, as Appellant acknowledges in his brief, the constitution permits the States to regulate against trespass and disruptive conduct in public buildings such as libraries. See, generally. Gregory v. Chicago, 394 U.S. 111 (1969). Also, it should be noted that a library is "a place dedicated to quiet, to knowledge, and to beauty". Brown v. Louisiana, 383 U.S. 131.142 (1966).

Further, Appellant argues that he could have been lawfully arrested for trespass on July 1, 2003 but not on July 5th. Therefore, the library violated his right to be in the library on July 5th. by arresting him for trespass.

The lower court ruled that if someone came in the library a week before and acted out of line, then the library could trespass the individual when he came back a week later (T105).

It seems Appellant is arguing that the library can't issue the Defendant a time specific (e.g. six months) no trespass warning for a public place (T70). Appellant cites no cases for this proposition.

Here, there is no doubt that the library worker had permission from the library board (the ruling body of the library) to trespass the Defendant after his actions on July 1st. (T78). It's obvious that Defendant was trespassed for his actions of July 1st. In fact, the only issue is whether the Hillsborough County Law Library acted reasonably in trespassing Defendant from its property.

Again, Appellant argues – without support of caselaw – that a single allegation of inappropriate conduct cannot be deemed reasonable in order to issue a trespass. In other words, was it reasonable for the library to trespass Defendant for disruptive conduct that occurred just 4 days prior to his refusal to leave the library. The jury was presented with this exact question and answered it in the affirmative.

Prohibiting disruptive behavior is perhaps the clearest and most direct way to achieve maximum library use and thus, it is appropriate to make/enforce rules that prohibit disruptive behavior. Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, at 1263 (3d Cir. 1992). As Appellant correctly contends, all of the testimony of the State's witness – David Pilver – must be assumed to be true in deciding a motion for J.O.A. Supra, Pagan.

Mr. Pilver testified that he had been working at the law library for almost nine years on the date of the incident (T68). On July 1, 2003, it was after closing time when he found the Defendant still in the library (T70). Pilver had seen the Defendant on previous occasions in the library (T72). Defendant started raising his voice and shouting at Pilver (T72). Defendant took an aggressive posture challenging Pilver to do something about his not leaving the library (T73). Pilver thought Defendant might attack him (T73). Defendant eventually left and Pilver got permission from his supervisors to trespass the Defendant in order to protect his safety (T73). Four days later, Defendant entered the library and Pilver told him to leave in front of T.P.D. officers (T80). The officer told Defendant to leave or he would be arrested (T101) and Defendant refused (T102).

There is no evidence that the library acted in an arbitrary or discriminatory manner in having Defendant trespassed. The question of whether the library acted reasonably in trespassing Defendant is a fact – based inquiry that was answered by the jury. There was ample evidence put forth by the State that Defendant committed the crime of trespass and the library was reasonable in having Defendant trespassed.

CONCLUSION

Based on the foregoing facts and legal authorities, Appelle requests this Honorable Court

to affirm the judgment and sentence of the trial court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnished by hand/mail delivery to Jeffrey Sullivan, P.O. Box 9000-RC2, Bartow, Florida,

33831-9000, Attorney for Appellant, this _____ day of July, 2008.

Respectfully submitted,

MARK A. OBER
STATE ATTORNEY
THIRTEENTH JUDICIAL CIRCUIT

John P. Johnson
Assistant State Attorney
Florida Bar #407866

JPJ/lf

-4-

Exhibit 3 to
Law Library's Motion for Summary Judgment

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## APPELLATE DIVISION

**DENNIS HUNT**

**Appellant**

**APPELLATE NO: 05-CF-13140**

VS.

LOWER CASE NO: 03-CM-18502

**STATE OF FLORIDA,**

**DIVISION: K**

**Appellee.**

_____/

Appeal from the County Court
for Hillsborough County:
Honorable Thomas Barber

John P. Johnson, Assistant State Attorney,
Attorney for Appellee

Jeffrey Sullivan,
Attorney for Appellant

_____/

FILED
2009 JAN 27 PM 3: 48
CLERK OF CIRCUIT COURT
HILLSBOROUGH COUNTY FL
CIRCUIT CRIMINAL

**AFFIRMED.**

  **DONE AND ORDERED** in Chambers at Tampa, Hillsborough County, Florida, this

27th day of January, 2009.


          DANIEL L. PERRY, CIRCUIT JUDGE

COPIES FURNISHED TO:

Honorable Thomas Barber

John P. Johnson, Assistant State Attorney, Attorney for Appellee

Jeffrey Sullivan, Attorney Appellant