FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA `22 PM 4:45`
TAMPA DIVISION CLERK, U S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

DENNIS HUNT,
          **Plaintiff,**

vs.                              **Case No. 8:07-cv-1168-T-30TBM**

**LAW LIBRARY BOARD,**          **JURY TRIAL DEMANDED**
  a Board created by             **INJUNCTIVE RELIEF REQUESTED**
  Hillsborough County, Florida;

**NORMA J. WISE,**
  In her official capacity as Director
  of the James J. Lunsford Law Library,
  and individually; and,

**DAVID L. PILVER,**
  individually,
             **Defendants.**
_____/

## PLAINTIFF'S THIRD AMENDED RESPONSE TO DEFENDANT LAW LIBRARY BOARD'S MOTION FOR SUMMARY JUDGEMENT

      COMES NOW, DENNIS HUNT, the Plaintiff In this cause of action, appearing PRO-SE and filing this First Amended Response to Defendant Law Library Board's Motion for Summary Judgement, and in support therefore states as follows:

### I.    INTRODUCTION

      Plaintiff's Amended Complaint pled causes of action against three defendants: The Law Library Board ("Law Library Board"), Norma J. Wise ("Wise"), individually and in her official capacity, and David L. Pilver ("Pilver"), individually, alleging that the respective defendants had violated Plaintiff's rights protected by the First and Fourteenth Amendments to the United States Constitution.

1

Each of the three defendants has filed a motion for summary judgement. (Dkt. #40 Law Library Board; Dkt. #32 Wise; Dkt. #28 Pilver) As to claims against the Law Library Board, defense counsel moves for summary judgement on three grounds: (1) Plaintiff has failed to identify a custom or policy adopted and practiced by the Law Library that confers liability under Section 1983; (2) Plaintiff's claims are both "Heck-barred" and precluded by the Rooker-Feldman doctrine; and (3) Plaintiff's claims for injunctive relief are not justiciable, as his request for prospective relief lacks a ripened claim. (Dkt. #40 Law Library Board)

Plaintiff's Response to Defendant Wise's Motion for Summary Judgement and replaced thereafter by the last subsequent amended version, is incorporated here by reference. Plaintiff's Amended Response to Defendant Pilver's Motion for Summary Judgement and replaced thereafter by the last subsequent amended version, is incorporated here by reference.

## II.  BACKGROUND

The Plaintiff Dennis Hunt (herein "Plaintiff" or "Hunt") was a patron of the James J. Lunsford Law Library (herein, "Law Library") during the years of 2002 and 2003. The Plaintiff is now, and was at all times relevant to this lawsuit, a "Qualified Individual with Disabilities" and "Disabled", pursuant United States Social Security Administration Disability Determination. Additionally, the Plaintiff is now, and was at all times relevant to this lawsuit, a recipient of Federal Housing Assistance, commonly referred to as "Section-8".

Plaintiff's claims arise from his use of the James J. Lunsford Law Library ("Law Library"). The Law Library is a public library created by Hillsborough County Ordinance No. 01-16. It is funded by occupational license taxes collected from attorneys and court filing fees collected by the Hillsborough County Clerk of Court and pursuant to Hillsborough County Ordinance No. 01-16. Defendant Law Library Board ("Law Library Board") was created with

full power and authority to maintain the Law Library for the use by the courts, members of the bench and bar, and the general public (Dkt. #21 Order). At all times relevant to this action, Defendant Norma J. Wise (herein "Wise") a.k.a. Norma J. Brown of Clearwater, FL was and is now an employee of the Law Library Board serving as "Director" of the Law Library. Defendant David L. Pilver (herein "Pilver") of 8649 N. Himes Ave, Apt. 921, Tampa, FL 33614-8364 was at all times relevant to this action, an employee of Defendant Law Library Board and was hired by the Law Library Board and/or Wise as a library assistant.

Sandra M. Kellaher, (herein "Kellaher") of Brandon, FL was in the year of 2003 and for 14 years prior, a Member of the Law Library Board, and in 2003 was Chair of the Law Library Board.

During 2003, the Plaintiff was patronizing the Law Library several times each week, mostly during the evening hours on weekdays, and during the afternoon hours on weekends. During the same time period and for years following, Plaintiff regularly visited and sat-in on various Court Hearings and Trials of the Thirteenth Judicial District, in and for Hillsborough County, Florida, to self-educate himself in the Judicial System and Laws of Florida. Plaintiff's initial goal was to enable himself to recover the value of his automobile through the Judicial System. [1]

---

[1] During a period of time when the Plaintiff was out-of-state, Plaintiff lost Title and Ownership of his automobile due to wrongful acts by the Board of Directors of the Condominium Association where Plaintiff resided. The Board of Directors ordered the removal of Plaintiff's automobile from a reserved parking space assigned for the exclusive use of Plaintiff's residence. After removing Plaintiff's automobile from the property, the Secretary member of the Board of Directors used Plaintiff's reserved parking space to park her automobile, leaving her reserved parking space open for the parking of her overnight and weekend guests.

Plaintiff believes the action taken by the condominium Board of Directors was to evict Plaintiff because his application revealed he was disabled and receiving Section-8 housing assistance. The condominium board's motivation to act against the Plaintiff, was akin to the ingrained hatred and ignorance that Defendant Pilver in the present case holds against Section-8 people: "Those Section-8 people don't even work, pay any rent, or anything else, and they are not even allowed in the apartment building that I live in." In the present case, Pilver and Wise took action to evict the Plaintiff from the Law Library.

## III. STANDARDS FOR SUMMARY JUDGEMENT

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "In making this assessment, we view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion, and resolve all reasonable doubts about the facts ... in favor of the non-movant." *Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179, 1185 (11th Cir.2002) (internal quotation marks, citations, and brackets omitted); *Lee v. Ferraro,* 284 F.3d at 1190.

## IV. NEITHER THE LAW LIBRARY BOARD OR IT'S AD-HOC POLICY SAFEGUARD THE FIRST AND FOURTEENTH AMENDMENT RIGHTS OF THE PLAINTIFF, AND NEITHER THE LAW LIBRARY BOARD OR IT'S AD-HOC POLICY CAN TRUMP THE UNITED STATES CONSTITUTION

The Law Library Board's ad-hoc policy provided Pilver with authority and means to get rid of the Plaintiff, permanently barring Plaintiff's access to the Law Library, but the ad-hoc policy does not safeguard the Plaintiff's constitutional rights under the First and Fourteenth Amendments of the United States Constitution. The United States Constitution is the supreme law of the land. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., Art. VI)

The Law Library Board's ad-hoc policy cannot trump the United States Constitution. The Law Library Board's ad-hoc policy and Wise's and Pilver's retaliations against the Plaintiff,

4

violates the Plaintiff's First Amendment rights, his right to receive information and ideas, right to silent protest, his right to petition his government for a redress of his grievances. "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (US Const. Amend. I)

The Law Library Board's ad-hoc policy and Wise's and Pilver's retaliations against the Plaintiff violated Plaintiffs rights to procedural and substantive due process, as guaranteed by the Due Process Clause of the Fourteenth Amendment. Plaintiff's procedural due process rights were violated by the Law Library Board's ad-hoc policy and Pilver's and Wise' retaliation towards the Plaintiff for his exercising of First Amendment rights, which were Plaintiff's written complaints of Pilver's behavior towards him and questioning of Wise's unsupported conclusions, therewith petitioning for change, and making inquiry of what Law Library Policies and Procedures were in place to detect and/or prevent theft of the cash revenues generated through the coin operated copy machines.

The concept of due process derives from the Magna Carta (1215), the great charter of English liberties whereby the nobles limited the king's authority. Its phrase "law of the land" was transformed over the years to "due process of law," a phrase included in 1692 in a Massachusetts statute. The Fifth Amendment of the Constitution (ratified 1791) requires that the federal government not deprive any person of "life, liberty, or property without due process of law." The same language is included in the Fourteenth Amendment (ratified 1868) as a constraint on the states.

Due process dictates that everyone is equal in the eyes of the law, and it also states that the law must be fair and clearly stated to prevent arbitrary actions by the state. The central aim of

due process doctrine is to assure fair procedure when the government imposes a burden on an individual. The doctrine seeks to prevent arbitrary government, avoid mistaken deprivations, allow persons to know about and respond to charges against them, and promote a sense of the legitimacy of official behavior.

Procedural due process does not prevent the government ultimately from making a deprivation. The notion of substantive due process does place substantive limits on official power, whereas procedural due process is concerned solely with the manner in which the government acts. This distinction appears in Londoner v. Denver (1908) and Bi-Metallic Investment Co. v. State Board of Equalization (1915). Taken together, these cases distinguish between the situation in which government singles out an individual for a deprivation based on the facts of a case, which triggers procedural due process requirements, and a broad rule affecting large numbers of people, which does not. In the former cases, the government must provide the procedural protections of notice and hearing; as the Supreme Court held in Grannis v. Ordean, (1914), "[t]he fundamental requisite of due process of law is the opportunity to be heard" (p. 394).

The 5th Amendment to the Constitution of the United States states that "no person shall...be deprived of life, liberty, or property, without due process of law." This right was extended to the states by the 14th Amendment (1868). Fundamental to procedural due process are adequate notice before the government can deprive one of life, liberty, or property, and the opportunity to be heard and defend one's rights.

The right to due process is well established, the Plaintiff had a right to some type of in person due process notice and hearing before an impartial hearing officer, informing him of the

accusations being made against him, and where he could present evidence and testimony in defense of himself, and confront his accusers. ()

Neither the Law Library Board or it's ad-hoc policy provided the Plaintiff any in person due process notice or hearing, as is required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (US Const. Amend. XIV).

Neither the Law Library Board, or it's ad-hoc policy safeguard the First or Fourteenth Amendment rights of the Plaintiff. The ad-hoc policy used to bar the Plaintiff from the Law Library is invalid under the U.S. Constitution as a denial of Plaintiff's First Amendment rights, encompassing freedom of speech, right to receive information and ideas, right of association, right to petition and right to silent protest. Furthermore the ad-hoc policy is invalid under the U.S. Constitution as a denial of Plaintiff's Fourteenth Amendment Procedural and Substantive Due Process rights.

The question to be decided is whether the Law Library Board, consistently with the federal Constitution's guarantee of free speech and due process, possesses the power to trump the Constitution of the United States, through it's custom of ad-hoc policy making. The Supremacy Clause - establishes the U.S. Constitution, Federal Statutes, and U.S. treaties as "the supreme law of the land." The U.S. Constitution is the highest form of law in the American legal system. The Law Library Board, through it's custom of ad-hoc policy making cannot trump the United States

Constitution and deny the Plaintiff of his First and Fourteenth Amendment rights. The United States Constitution is the supreme law of the land, and the rights of free speech and due process that the Law Library Board denied Plaintiff of, are well-established constitutional laws.

## V. PLAINTIFF SEEKS THE ENFORCEMENT OF THAT WHICH THE UNITED STATES CONSTITUTION GUARANTEES HIM, AND THAT WHICH THE DEFENDANTS LAW LIBRARY BOARD, WISE AND PILVER, ACTING UNDER COLOR OF STATE LAW, HAS DENIED HIM.

The Plaintiff went to the Law Library on July 5, 2003 to conduct legitimate library type business, and he had not yet completed his business, when he was told that he had to leave the Law Library, before closing time, and while the library remained open to the general public. The Law Library Board's ad-hoc policy provided the means and authority for Pilver to get rid of, trespass and permanently bar the Plaintiff from the Law Library. The Law Library Board's ad-hoc policy provided Pilver with an unbridled discretion to trespass and permanently bar the Plaintiff from the Law Library.

The government has the power to preserve the property under its control for use to which it is lawfully dedicated. Adderly v. Florida, 385 US 39, 47 (1966). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right of free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 US 788, 799-800 (1985). However, the Government does not enjoy absolute freedom from First Amendment constraints while acting in its proprietary capacity. United States v. Kokinda, 110 S.Ct. 3115, 3119 (1990).

Plaintiff was lawfully in the Law Library, conducting his law library type business of legal research and copying of research materials. The Plaintiff did not interfere with the purpose of the

law library, nor did he interfere with any other patron's use of the library, or library staff. The Plaintiff caused no disturbance, did not threaten anyone, and was not violating any valid library rule or policy. The Plaintiff was simply minding his own business, doing his legal research and using his personal copier to make copies of materials relevant to his civil case in Hillsborough County Court.

The extent to which the Government may limit access depends on whether the forum is public or nonpublic. Cornelius 473 US at 797. The Supreme Court has identified three different types of public property for free speech purposes: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum. Perry Education Association v. Perry Local Educators' Association, 460 US 37, 45-46 (1983).

"In addition to time, place, or manner regulations, the state may reserve [a nonpublic forum] for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry 460 US at 47. As a nonpublic forum, the Government may restrict First Amendment activity so long as the restrictions are "viewpoint neutral" and "reasonable in light of the purpose served by the forum." Cornelius 473 US at 806.

"A Government regulation that allows arbitrary application, and is thus unconstitutionally overbroad, is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." Forsyth v. Nationalist Movement, 505 US 123, 130 (1992). Both Pilver and Wise disagree with the Plaintiff's point of view in his exercising of First Amendment rights, and were retaliating against Plaintiff for his questioning of library policies, criticizing Wise's unsupported conclusions regarding copy machine revenues, Pilver's watching of television programs and

9

aggressive behaviors towards the Plaintiff, and Plaintiff's inquiry of whether the Law Library had procedures in place to detect theft of the cash coinages from the copy machines.

A crucial inquiry is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. _Grayned v. City of Rockford_, 408 US 104, 116 (1972). For example, a silent vigil would not interfere with a public library whereas making a speech in the reading room of the library would. Id. The Plaintiff's protest by silent vigil did not interfere with the purpose or business of the Law Library, or any other patron or library staff. Plaintiff's written inquiries and complaints did not interfere with the purpose or business of the Law Library, and were protected speech. The Law Library Board's ad-hoc policy provided an unbridled authority and vehicle for Pilver and Wise to get rid of and permanently bar the Plaintiff's access to the Law Library, in retaliation for the Plaintiff's exercising of First Amendment rights. The Law Library Board acted with recklessness, and Pilver and Wise with malice and deceit.

## VI. PLAINTIFF HAS NOT FAILED TO IDENTIFY A CUSTOM OR POLICY ADOPTED AND PRACTICED BY THE LAW LIBRARY THAT CONFERS LIABILITY UNDER SECTION 1983

"A State or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and nondiscriminatory manner, equally applicable to all and administered with equality to all. . . . it may not invoke regulations as to use — whether they are ad hoc or general — as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights." _Brown_, 383 U.S. at 143. [2]

The Law Library Board, between the 1st and 5th of July 2003 delegated authority to Pilver to take action against the Plaintiff via an ad-hoc policy to trespass and permanently bar the Plaintiff from the Law Library, violating the Plaintiff's 1st and 14th Amendment rights.

2 When a person seeks to use government property for expressive conduct, different rules apply depending on the type of property involved. "In balancing the government's interest in limiting the use of its property against the interests of those who wish to use the property for expressive activity, the Court has identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987)(citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45-46 (1983)).

"In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end .... The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45. "We have further held, however, that access to a nonpublic forum may be restricted by government regulation as long as the regulation 'is reasonable and not an effort to suppress expression merely because officials oppose the speaker's view.' *Jews for Jesus, Inc.*, 482 U.S. at 573 (quoting *Perry*, 460 U.S. at 46).

The Supreme Court has defined the term "custom" to include "persistent and wide-spread ... practices," "permanent and well settled" practices, and "deeply embedded traditional ways of carrying out policy." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970). Although not necessarily adopted by a person or body with rulemaking authority, customs can become so settled and permanent as to have the force of law. *Monell*, 436 U.S. at 690-691, 98 S.Ct. at 2035-2036. To have this effect, the custom must be "created" by those whose "edicts or acts may fairly be said to represent official policy." Id. at 694, 98 S.Ct. at 2037; see *Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir.1983).

In Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that although municipalities can be sued under section 1983, liability must be predicated upon more than a theory of respondeat superior. It held, however, that liability may be predicated upon a showing that a government employee's unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official

decision-making channels." 436 U.S. at 690-691, 98 S.Ct. at 2035-2036. Regardless whether the basis of the claim is an officially promulgated policy or an unofficially adopted custom, it must be the "moving force behind the constitutional deprivation before liability may attach." City of Oklahoma City v. Tuttle, --- U.S. ----, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985) (plurality opinion) (quoting Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)). Thus, not only must there be some degree of "fault" on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation. Tuttle, 105 S.Ct. at 2435-36. Both Wise, the director and head of the Law Library, and Kellaher, the chair and head of Law Library Board, in consultations via telephone, approved and enacted the ad-hoc policy that granted and authorized an unbridled discretion to Pilver, to deny the Plaintiff of any access to the Law Library. The ad-hoc policy granted and authorized an unbridled discretion to Pilver, to trespass the Plaintiff from the Law Library and have the Plaintiff prosecuted under state law, charging Plaintiff of Criminal Trespassing at the Law Library on July 5, 2003.

Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of respondeat superior. McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 (11th Cir.1981), cert. denied, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Supervisory liability is not limited, however, to those incidents in which the supervisor personally participates in the deprivation. Goodson v. City of Atlanta, 763 F.2d 1381, 1389 (11th Cir.1985); Wilson v. Attaway, 757 F.2d 1227, 1241 (11th Cir.1985); Sims v. Adams, 537 F.2d 829, 831 (5th Cir.1976). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. Wilson, 757 F.2d at 1241; Henzel v. Gerstein, 608 F.2d 654, 658 (5th Cir.1979). This causal connection can be established when a history of widespread abuse puts the

responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action. Wilson, 757 F.2d at 1241; Sims, 537 F.2d at 832.

The Law Library Board had a custom of making ad-hoc rules and policy through the Law Library Board Chair, Sandra M. Kellaher. On June 8, 2005 Kellaher testified as a state-witness in the trial of the Plaintiff on the charge of Trespassing at the James J. Lundsford Law Library. Kellaher was chair of the Law Library Board for 14 plus years (Doc 28 p.110 lines 7-10) . One of Kellaher's duties as Chair of the Law Library Board was that if there were any complaints about the law library or personnel problems or any problems within the library, Kellaher handled them individually for the Law Library Board, because it was impossible to get the Law Library Board together (Kellaher Testimony, Doc 28 p.111). Between the 1st and 5th of July 2003, Kellaher enacted an ad-hoc policy to trespass and permanently bar the Plaintiff from the Law Library without any Due Process protection for the Plaintiff. It was a custom of the Law Library Board to delegate this duty to the Law Library Board Chair, Sandra M. Kellaher, as it was impossible to get the board members together. Kellaher's ad-hoc policy barring the Plaintiff from the Law Library was enacted on behalf of the Law Library Board, by Kellaher, as was the custom. Kellaher enacted the ad-hoc policy barring the Plaintiff from the Law Library on the request of Wise via telephone between the 1st and 5th of July 2003. (Kellaher Testimony, Doc 28, p. 111, lines 22-24)

Plaintiff was not provided any due process notice or hearing before barring Plaintiff's access to the Law Library and it's legal collection of forty-three thousand volumes. After barring Plaintiff's access to the Law Library and it's collection, the Plaintiff was not provided any due process hearing to appear in person to contest or appeal the barring, or to present evidence and testimony, or to confront his accusers, Wise and Pilver. The Law Library Board has no concern

for the rights of the Plaintiff. To the Law Library Board, Wise and Pilver, the Plaintiff was nothing more than an undesirable patron, one not worthy of the protections of our nation's constitution. The Plaintiff was treated like Pilver loudly expressed one evening in the Law Library: "Those Section-8 people don't even work, pay any rent or anything else, and they are not even allowed in the apartment building I live in." Although reality is entirely diametrical to Pilver's accusations and beliefs, with the encouragement and support of Wise, Pilver's accusations and beliefs are validated through the Law Library Board custom of not recognizing or extending any of the rights and protections of our great nation's constitution to undesirable patrons. The Plaintiff is a qualified individual with disabilities, pursuant to United States Social Security Administration disability determination, and is disabled. Certainly the Law Library Board would provide due process and first amendment rights and protections to an attorney patron before permanently barring access to the Law Library, but in this case where the patron is an undesirable, indigent, an individual with disabilities and one of those Section-8 people that David L. Pilver despises, the evidence points entirely opposite. The Plaintiff in this case is denied of his right to equal treatment.

The First Amendment includes freedom of Speech, Press, Religion, Assembly and Petition. The corollary right to receive information is both implied and essential to the exercise of First Amendment rights. Board of Education v. Pico, 457 U.S. 853, 867 (1982); Reno v. American Civil Liberties Union, 521 U.S. 844 (1997). The Plaintiff has a right to petition for a change in Law Library policies and customs, and bring his grievances before his government to petition for change. Wise's and Pilver's retaliation in permanently barring the Plaintiff from the Law Library for bringing his grievances to the attention of the Law Library Board, violates the Plaintiff's First and Fourteenth Amendment rights.

If Kellaher's ad-hoc policy is subject to meaningful review, the Law Library Board has had more than ample time, nearly six years to review the ad-hoc policy implemented through custom of the Law Library Board delegating the duty of making policy to Kellaher as the chair of the Law Library Board. As defense counsel argues, the Law Library Board has not made any decisions regarding the ad-hoc policy barring the Plaintiff from the Law Library to this date.

The Law Library Board exhibits a persistent indifference to the protection of law library patron Substantive and Procedural Due Process and First Amendment rights. The Law Library Board has exhibited a persistent failure to enact any rule or procedure to make available or provide any due process notice and hearing, for protection of patron rights before permanently trespassing and barring patron access to the Law Library. For nearly 6 years, the Law Library has maintained the trespass and barring of the Plaintiff from the Law Library and without providing any due process protection to the Plaintiff. The Law Library does not provide any procedure to appeal a Trespass Warning. (Amended Complaint, Dkt. #9, Exh. # 9) The Law Library does not provide a patron any due process hearing before or after the Law Library issues a Trespass Warning. The Plaintiff was not provided any due process hearing or any opportunity to appeal the Trespassing and barring of the Plaintiff from the Law Library. The Plaintiff was stripped of any access whatsoever to the forty-three thousand volumes of legal information and ideas provided free to the bench, bar and general public. (Dkt. #9, Exh. #9; see also Trespass Warning)

## VII. PLAINTIFF'S CLAIMS ARE NOT PRECLUDED BY THE ROOKER-FELDMAN DOCTRINE

*Rooker v. Fidelity Trust Co.*, No. 295, SUPREME COURT OF THE UNITED STATES, Motion to dismiss or affirm submitted November 26, 1923, December 10, 1923 Decided. Overview: Appellants were barred from seeking direct review of a decision reached by a state's

highest court in a federal district court because the state court's decision was an exercise of jurisdiction and was an effective and conclusive adjudication. *Id.*

In *Rooker* Appellants were barred from seeking direct review of a decision reached by a state's highest court in a federal district court because the state court's decision was an exercise of jurisdiction and was an effective and conclusive adjudication. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); 44 S.Ct. 149; 68 L.Ed. 362.

In the present case, the Plaintiff is not seeking a direct review in federal district court of a decision reached by a state's highest court. The present case was filed in the U.S. District Court, Middle District of Florida, Tampa Division on July 3, 2007. (Dkt. #1 Complaint) The related state criminal court case for trespassing was still residing in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Appellate Division, pending that court's decision. The Plaintiff's Appellant Brief (Dkt. #-- Exh. #--) was filed on June 16, 2008 and his Motion For Written Opinion filed on February 17, 2009. Presently, the related state criminal case is still pending in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Appellate Division. The state circuit court appellate division only just issued a per cerium decision on January 27, 2009, and the case is currently stayed in that court by a Motion for Written Opinion. (see Exh.#21, Motion). Plaintiff's state court motion for written opinion has not to this date been decided in the state circuit court. (see Exh. #22, State Docket Report) Furthermore, the related state criminal case has not been submitted to or decided by the Florida Supreme Court, nor has the case been submitted to or decided by the state court of appeals, the Second District Court of Appeals, State of Florida. To date, there has been no conclusive final adjudication of the related state criminal case for trespassing, and therefore

Defendant Law Library Board's arguments under the Rooker-Feldman Doctrine fail under the scope of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); 44 S.Ct. 149; 68 L.Ed. 362.

In *Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, (reversed and remanded), the Supreme Court expressed the sacristy of application of the *Rooker-Feldman* Doctrine: "The *Rooker-Feldman* doctrine, at issue in this case, has been applied by this Court only twice, in *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413, and in *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462."

In expounding the limits of the *Rooker-Feldman* Doctrine the Supreme Court stated: "*Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, §1257, precludes a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority. In both cases, the plaintiffs, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment." *Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.

In the present case, the Plaintiff's is not calling upon the District Court to overturn an injurious state-court judgment. The Plaintiff is presently pursuing a criminal appeal in the state courts for his arrest for trespassing under Florida State Law on July 5, 2003. The Plaintiff's state court case has not been adjudicated to finality.

### *Rooker:*

In *Rooker*, plaintiffs previously defeated in state court filed suit in a Federal District Court alleging that the adverse state-court judgment was unconstitutional and asking that it be declared "null and void." 263 U.S., at 414—415. Noting preliminarily that the state court had

acted within its jurisdiction, this Court explained that if the state-court decision was wrong, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Id.*, at 415. Federal district courts, *Rooker* recognized, are empowered to exercise only original, not appellate, jurisdictions. *Id.*, at 416. Because Congress has empowered this Court alone to exercise appellate authority "to reverse or modify" a state-court judgment, *ibid.*, the Court affirmed a decree dismissing the federal suit for lack of jurisdiction, *Id.*, at 415, 417.

*Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.

   In the present case before this court, Hunt has not file suit alleging that an adverse state-court judgement was unconstitutional, nor is Hunt asking that an adverse state-court judgement be declared "null and void". Hunt is pursuing his state-court case through the state-courts. (see Exh. #21, and Exh. #22) In the case before this court, the Plaintiff filed suit alleging that the respective defendants have violated the Plaintiff's rights protected by the First and Fourteenth Amendments to the United States Constitution. Defendant Law Library Board's arguments fail under Rooker.

### *Feldman:*

   In *Feldman*, two plaintiffs brought federal-court actions after the District of Columbia's highest court denied their petitions to waive a court Rule requiring D.C. bar applicants to have graduated from an accredited law school. Recalling *Rooker*, this Court observed that the District Court lacked authority to review a final judicial determination of the D.C. high court because such review "can be obtained only in this Court." 460 U.S., at 476. Concluding that the D.C. court's proceedings applying the accreditation Rule to the plaintiffs were "judicial in nature," *id.*,

at 479—482, this Court ruled that the Federal District Court lacked subject-matter jurisdiction, *id.*, at 482. However, concluding also that, in promulgating the bar admission Rule, the D.C. court had acted legislatively, not judicially, *id.*, at 485—486, this Court held that 28 U.S.C. § 1257 did not bar the District Court from addressing the validity of the Rule itself, so long as the plaintiffs did not seek review of the Rule's application in a particular case, 460 U.S., at 486.

*Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.

In the present case before this court, Plaintiff's state-court case has not been adjudicated to finality and has not gone to either the Second District Court of Appeals for the State of Florida, or the Florida Supreme Court. Plaintiff's state-court case is stayed pending decision on Hunt's Motion for Written Opinion in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Appellate Division. (see Exh. #21, and Exh. #22)

**Since *Feldman:***

Since *Feldman*, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction. However, the lower federal courts have variously interpreted the *Rooker-Feldman* doctrine to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law under 28 U.S.C. § 1738. (*Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.)

*Held:* The *Rooker-Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting

district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines allowing federal courts to stay or dismiss proceedings in deference to state-court actions. Pp. 10—13.

*Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, §1257, precludes a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority. In both cases, the plaintiffs, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment.

Because §1257, as long interpreted, vests authority to review a state-court judgment solely in this Court, *e.g., Feldman*, 460 U.S., at 476, the District Courts lacked subject-matter jurisdiction, see, *e.g., Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.*, 535 U.S. 635, 644, n. 3.

When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. See, *e.g., McClellan* v. *Carland*, 217 U.S. 268, 282.

Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. See, *e.g., Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800.

But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or a related question while the case remains *sub judice* in a federal court.

*Exxon Mobil Corp. et al.* v. *Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.

The *Rooker-Feldman* doctrine is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005) Such is not the case before this court in Plaintiff's complaint.

## Governed by Preclusion Law:

Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. Under 28 U.S.C. § 1738 federal courts must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523. Preclusion is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c).

In parallel litigation, a federal court may be bound to recognize the claim - and issue - preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. Nor does §1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.

If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction and state law determines whether the defendant prevails under preclusion principles. Pp. 10-12.

The *Rooker-Feldman* doctrine does not preclude the federal court from proceeding in this case. ExxonMobil has not repaired to federal court to undo the Delaware judgment in its favor, but appears to have filed its federal-court suit (only two weeks after SABIC filed in Delaware and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue. *Rooker-Feldman* did not prevent the District Court from exercising jurisdiction when

ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts. The Third Circuit misperceived the narrow ground occupied by *Rooker-Feldman,* and consequently erred in ordering the federal action dismissed. Pp. 12—13.

364 F.3d 102, reversed and remanded.

Ginsburg, J., delivered the opinion for a unanimous Court.

*Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.

The Plaintiff's claims in the present case are not barred by the *Rooker-Feldman* Doctirine. Neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or a related question while the case remains *sub judice* in a federal court. *Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005), 364 F.3d 102, reversed and remanded.)

## VIII.  **PLAINTIFF'S CLAIMS ARE NOT "HECK-BARRED"**

In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held that a civil rights plaintiff suing to recover damages for an allegedly unconstitutional conviction or imprisonment must prove that the conviction or sentence has been invalidated. See Heck v. Humphrey, 512 U.S. at 486-87, 114 S. Ct. at 2372. A claim for damages relating to a conviction or sentence that has not been invalidated is not cognizable under 42 U.S.C. § 1983. Id. at 487, 114 S. Ct. at 2372. The Supreme Court has applied the Heck analysis to claims made by prisoners challenging prison disciplinary actions. See Edwards, 520 U.S. at 648, 117 S. Ct. at 1589.

The Plaintiff in the present case, Hunt, is not a prisoner suing for an allegedly unconstitutional conviction or imprisonment. Therefore, the present case before this court is not Heck-Barred. Plaintiffs prevailing in his 1983 claims, will not necessarily negated Plaintiff's arrest for trespassing on July 5, 2003 by TPD Officer Charles Hathcox. Plaintiff is not suing the Tampa Police Department or TPD Officer Charles Hathcox. Alternatively, if the Plaintiff prevails on his claims and tends to negate the state-court, his claims are not barred under the scope of Heck. Plaintiff's state-court case is still pending and has not been adjudicated to finality.

## IX.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE JUSTICIABLE AND HIS REQUEST FOR PROSPECTICE RELIEF IS A RIPENED CLAIM

Plaintiff's claims for injunctive relief are justiciable and his request for relief is a ripened claim. Plaintiff has a right to receive the information contained in the forty-three-thousand volumes of legal information provided free to the court bench, bar and general public by the Law Library Board and through access to the Law Library.

An injury is irreparable if monetary damages will not redress it. See Cate, 707 F.2d at 1189; Deerfield Med. Center v. City of Deerheld Beach, 661 F.2d 328, 338 (5th Cir. Unit B 1981). Infringement of First Amendment rights is presumed to constitute an irreparable injury that will even support the issuance of a preliminary injunction. See Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion); Deerfield Med. Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. Unit B 1981).

In the context of an alleged First Amendment violation where "each passing day may constitute a separate and cognizable infringement on the First Amendment." Nebraska Press Ass'n v. Stuart, 423 U.S. 1319, 1325, 96 S.Ct. 237, 46 L.Ed.2d 199 (1975) (Blackmun, J., in chambers). The Plaintiff specifically argues that he is irreparably injured by the Law Library

Board, Wise and Pilver, for depriving the Plaintiff of his First Amendment rights and money alone will not redress this deprivation.

## X.  CONCLUSION

The Law Library Board is not entitled to summary judgement, as a matter of law, and if Wise in her official capacity is the proper defendant party, then for all of the foregoing reasoning, in the alternative, applied as to Wise in her official capacity, is not entitled to summary judgement as a matter of law.

Respectfully submitted and dated this ___22nd___ day of ___May___, 2009.

_____
DENNIS HUNT, PRO-SE
2319 Nantucket Drive
Sun City Center, FL 33573
Tel: (813) 436-9915
E-mail: huntdennis2007@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been forwarded via U.S.P.S First Class Mail to Stephen M. Todd, Senior Assistant County Attorney, P.O. Box 1110, Tampa FL 33601-1110, on this 22nd day of ___May___, 2009.

_____
DENNIS HUNT, PRO-SE

## SWORN STATEMENT

I have read the foregoing Motion and under the penalties of perjury, I state the facts stated therein are true and correct.

___May 22, 2009___          _____
DATE                        DENNIS HUNT, PRO-SE
                            2319 Nantucket Drive
                            Sun City Center, FL 33573-8005

3rdAmendRespLawLibBrdSJ.doc

24

Hillsborough County Clerk's Court Progress Dockets

## Docket

**Name:** HUNT, DENNIS B   **Person Id:** @941721   **Party:** D001   **Party Closed - Status:** 02/12/2009

**UCN:** 292005CF013140D001TA   **Case Number:** 05-CF-013140   **Case Created:** 07/06/2005 **Division:** A   **Case Closed - Status:** 02/12/2009

**Case Type Description:** APPEALS   **Court Type:** CIRCUIT CRIMINAL

| Filing Date | Party | Description | Text |
|---|---|---|---|
| 02/17/2009 | **General** | CASE STATUS UPDATED | |
| 02/17/2009 | D001 | *****FILE SENT TO***** | JUDGE D. PERRY |
| 02/13/2009 | D001 | MOTION | APPELLANT'S MOTION FOR WRITTEN OPINION filed by JEFFREY SULLIVAN, Esq. sent for consideration to JUDGE D. PERRY |
| 02/12/2009 | D001 | COPIES SENT TO: | SAO, JEFFREY SULLIVAN ESQ HON DANIEL SLEET HON. LAWRENCE LEFLER/ ked |
| 02/12/2009 | D001 | DEFENDANT CLOSED | |
| 02/12/2009 | D001 | MANDATE FILED AFFIRMING | |
| 01/28/2009 | D001 | ****FILE SENT TO APPEALS DEPT** | TO PREPARE THE MANDATE |
| 01/27/2009 | D001 | COPIES SENT TO: | STATE ATTORNEY and JEFFREY SULLIVAN, Esq. (OPINION filed on 27-FEB-09) |
| 01/27/2009 | D001 | OPINION FILED | BY JUDGE D. PERRY; AFFIRMED |
| 07/28/2008 | D001 | *****FILE SENT TO***** | JUDGE D. SLEET (Re: Opinion) |
| 07/01/2008 | D001 | APPELLEE'S BRIEF FILED | |
| 07/01/2008 | D001 | SEE DOCKET TEXT | APPELLANT'S REPLY BRIEF: 21-JUL-08 |
| 06/16/2008 | D001 | APPELLANT BRIEF FILED | |
| 06/16/2008 | D001 | SEE DOCKET TEXT | APPELLEE'S BRIEF DUE  06-JUL-08 |
| 04/09/2008 | D001 | COPIES OF ORDER SENT TO. | SAO, PD & REGIONAL COUNSEL'S OFFICE (ORDER filed on 09-APR-08) |
| 04/09/2008 | D001 | ORDER APPOINTING SPECIAL PD | REGIONAL COUNSEL SIGNED BY DANIEL SLEET |
| 04/09/2008 | D001 | SEE DOCKET TEXT | APPELLANT'S BRIEF DUE: 09-MAY-08 |
| 04/08/2008 | D001 | COPIES OF ORDER SENT TO: | PA- JOSEPH DATO, ESQ. OFFICE OF ATTY GENERAL. PD |
| 04/07/2008 | D001 | EVENT MODIFIED | Event Change,SRP,09-APR-2008,08:30:00, Judge:SLEET, DANIEL H , Room:CR11, Room Location:AN, User ID = GILBERTJ |
| 04/07/2008 | D001 | ORDER GRANTING | DEF COUNSEL'S MOTN TO WITHDRAW (JOSEPH DATO,ESQ) SIGNED BY DANIEL SLEET |
| 04/04/2008 | D001 | STATUS REVIEW SET & NOTICE SEN | Event Scheduled,SRP,10-APR-2008,08:30, Judge: SLEET, DANIEL H., Room:CR11, Room Location:AN, User ID = JONESM |
| 04/01/2008 | D001 | STATUS REVIEW SET & NOTICE SEN | Event Scheduled,SRP,03-APR-2008,08:30, Judge:SLEET, DANIEL H., Room:CR11, Room Location:AN, User ID = GILBERTJ |
| 03/27/2008 | D001 | *****FILE SENT TO***** | JUDGE D. SLEET (Re: APPELLANT'S RESPONSE TO STATE'S MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION) |
| 03/25/2008 | D001 | MOTION/PENDING CASE - SET | Event Scheduled,MOP,01-APR-2008,08:30, Judge:SLEET, DANIEL H., Room:CR11, Room Location:AN, User ID = BAKKEG |
| 03/24/2008 | D001 | MOTION TO WITHDRAW | AS ATTY OF RECORD FILED BY JOSEPH GARDNER DATO |

*EXHIBIT # 22*

| | | |
|---|---|---|
| 03/24/2008 D001 | NOTICE OF HEARING | FOR 04-01-08 |
| 03/24/2008 D001 | RESPONSE | TO STATE'S MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION |
| 01/24/2008 D001 | ORDER GRANTING | ORDER GRANTING, IN PART, MOTION FOR 90 DAY EXTENSION OF TIME FOR APPELLANT TO RESPOND TO APPELLEE (SIC) MOTION TO DISMISS APPEAL LACK OF JURISDICTION signed by JUDGE D. SLEET: Copies sent to SAO and DENNIS HUNT, pro se. |
| 01/24/2008 D001 | ORDER GRANTING | ORDER GRANTING, IN PART, MOTION FOR 90 DAY EXTENSION OF TIME FOR APPELLANT TO RESPOND TO APPELLEE'S RESPONSE TO APPELLANT'S MOTION FOR CIRCUIT COURT TO ORDER ADDITIONAL COUNTY COURT RECORD AND TRANSCRIPTS" Copies sent to SAO & DENNIS HUNT, Pro se. |
| 01/24/2008 D001 | SEE DOCKET TEXT | APPELLANT'S RESPOND DUE: 24-MAR-08 APPELLANT is GRANTED an extension of 60 DAYS from the date of this ORDER in which to respond to Appellee's response. |
| 01/17/2008 D001 | COPIES SENT TO: | CONFLICT COUNSEL, PD, SAO & JAC |
| 01/17/2008 D001 | ORDER | APPOINTING ARTICLE V CONFLICT COUNSEL - SIGNED BY JUDGE SLEET. |
| 12/27/2007 D001 | CIVIL AFF APP INDIGENT STATUS | COPY |
| 12/26/2007 D001 | CIVIL AFF APP INDIGENT STATUS | Determined to be Indigent, Form filed. |
| 12/26/2007 D001 | MOTION FOR APPOINTMENT | OF APPELLANT COUNSEL |
| 10/04/2007 D001 | MOTION | FOR 90 DAY EXTENTION OF TIME FOR APPELLANT TO RESPOND TO APPELLEE'S RESPONSE TO APPELLANT'S "MOTION FOR CIRCUIT COURT TO ORDER ADDITIONAL COUNTY COURT RECORDS AND TRANSCRIPTS" - UNSIGNED ORDER ATTACHED |
| 09/28/2007 D001 | *****FILE SENT TO***** | JUDGE D. SLEET |
| 09/27/2007 D001 | MOTION TO DISMISS | MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION filed by STATE ATTORNEY sent for consideration to JUDGE D. SLEET |
| 09/27/2007 D001 | STATE'S RESPONSE | RESPONSE TO APPELLANT'S "MOTION FOR CIRCUIT COURT TO ORDER ADDITIONAL COUNTY COURT RECORDS AND TRANSCRIPTS"-Filed |
| 09/12/2007 D001 | *****ORDER***** | ORDER TO RESPOND TO DEFENDANT'S MOTION FOR CIRCUIT COURT TO ORDER ADDITIONAL COUNTY COURT RECORD AND TRANSCRIPTS FOR INCLUSION IN THE RECORD OF THE CIRCUIT COURT OF APPEALS signed by JUDGE D. SLEET. It is therefore ORDERED and ADJUDGED that the Office of the STATE ATTORNEY shall respond to defendant's Motion for Circuit Court to Order Additional County Court Records and Transcripts for Inclusion in the Record of the Record of the Circuit Court of Appeals within 15 days from the date of this Order. |
| 09/12/2007 D001 | COST SUSPENDED | STATE ATTORNEY and PUBLIC DEFENDER (ORDER filed on 12-SEP-07) |
| 09/12/2007 D001 | SEE DOCKET TEXT | APPELLEE'S (SAO) RESPOND DUE: 27-SEP-07 |
| 01/29/2007 D001 | NOTICE | OF PENDING MOTIONS FILED IN THE LOWER COURT |
| 05/26/2006 D001 | *****FILE SENT TO***** | FILE RETURN TO LAW CLERK |
| 05/22/2006 D001 | LETTER TO JUDGE FROM: | DEF REGARDING A NOTICE OF ADDRESS CHANGE/ |
| 05/22/2006 D001 | MOTION | PROSE/UNSIGNED MOTION FOR THE COURT TO TAKE NOTICE OF APPELLANT'S CHANGE OF ADDRESS FOR THE RECEIPT OF MAIL AND SERVICE OF COURT PAPERS/ |

| Date | Type | Description |
|---|---|---|
| 05/22/2006 D001 | MOTION | MOTION FOR THE COURT TO TAKE NOTICE OF APPELLANT'S CHANGE OF ADDRESS FOR THE RECEIPT OF MAIL AND SERVICE OF COURT PEPERS. MOTION SENT TO THE JUDGE |
| 03/31/2006 D001 | MOTION | FOR ENLARGEMENT OF TIME TO FILE INITIAL BRIEF |
| 03/21/2006 D001 | *****FILE SENT TO***** | FILED AND MOTION SENT TO JUDGE |
| 03/21/2006 D001 | *****MOTION***** | FOR COURT TO ORDER ADDITIONAL COUNTY COURT RECORDS AND TRANSCRIPTS FOR INCLUSION IN THE FILE FOR THE CIRCUIT COURT OF APPEALS. (FILED 3 ORIGINALS OF THE SAME MOTION) |
| 02/17/2006 D001 | COPIES OF ORDER SENT TO: | DEFT DENNIS HUNT AND STATE ATTORNEY |
| 02/17/2006 D001 | SEE DOCKET TEXT | APPELLANT'S BRIEF DUE ON 04-19-06 |
| 02/07/2006 D001 | ORDER | FOR ENLARGEMENT OF TIME TO FILE INTIAL BRIEF / GRANTED FOR 60 DAYS FROM TODAY'S DATE / SIGNED 2-7-06 BY DP / MLC |
| 02/06/2006 D001 | COPIES SENT TO: | ATTORNEY PEDRO L AMADOR |
| 02/06/2006 D001 | SEE DOCKET TEXT | APPELLANT'S BRIEF DUE ON 02-17-06 |
| 02/02/2006 D001 | ORDER | ON FAILURE TO FOLLOW RULES SIGNED BY JUDGED |
| 02/01/2006 D001 | *****FILE SENT TO***** | JUDGE PERRY |
| 02/01/2006 D001 | SEE DOCKET TEXT | ORDER ON FAILURE TO FOLLOW RULES OF APPELLATE PROCEDURE REASON APPELLANT FAILED TO FILED BRIEF |
| 01/30/2006 D001 | ****MOT ENLARGEMENT OF TIME*** | TO FILE INITIAL BRIEF / FILED W/O A NOTICE OF HEARING |
| 01/12/2006 D001 | NOTICE OF HEARING | FOR 1-11-06/ (MOTN FILED 12-30-05)/ (NOT SET. RECEIVED LATE) |
| 12/30/2005 D001 | MOTION TO WITHDRAW AS ATTORNEY | FILED BY VICTORIA A HOLMBERG |
| 12/15/2005 D001 | COPIES OF ORDER SENT TO: | ATTORNEY HOLMGERG |
| 12/15/2005 D001 | COPIES OF ORDER SENT TO: | ATTORNEY HOLMBERG. STATE ATTORNEY |
| 12/15/2005 D001 | SEE DOCKET TEXT | APPELLANT'S BRIEF DUE 1-31-06 |
| 12/14/2005 D001 | ORDER | ORDER FOR ENLARGEMENT OF TIME TO FILE INITIAL BRIEF -GRANTED- |
| 12/14/2005 D001 | ORDER | ORDER APPOINTMENT OF SPECIAL PUBLIC DEFENDER |
| 12/07/2005 D001 | MOTION | MOTION FOR ENLARGEMENT OF TIME TO FILE INITIAL BRIEF. SENT TO JUDGE |
| 12/06/2005 D001 | *****FILE SENT TO***** | FILE AND ORDER APPOINTING PD SENT TO JUDGE FOR CONSIDERATION |
| 11/29/2005 D001 | STATUS REVIEW SET & NOTICE SEN | Event Scheduled,SRP,01-DEC-2005,08:30, Judge PERRY DANIEL, Room:CR16, Room Location:AN. User ID = GILLETTE |
| 11/23/2005 D001 | MOTION TO WITHDRAW | AND APPOINT PRIVATE COUNSEL - UNSIGNED ORDER ATTACHED |
| 11/23/2005 D001 | MOTION/PENDING CASE SET | Event Scheduled,MOP,28-NOV-2005,08:30, Judge:PERRY. DANIEL, Room:CR16, Room Location:AN. User ID = DRAKEB |
| 11/23/2005 D001 | NOTICE OF HEARING | FOR 11-28-05 |
| 11/01/2005 D001 | SEE DOCKET TEXT | APPELLANT'S BRIEF DUE 12-3-05 |
| 10/31/2005 D001 | ****LTR OF TRANSMITTAL FILED** | CONSISTING OF 2 VOL |
| 10/31/2005 D001 | LETTER OF TRANSMITTAL | RECORD SENT TO STATE ATTORNEY & PD. NCR |
| 10/26/2005 D001 | TRANSCRIPT FILED | 6-6-05 AND 6-8-05; ALL TRANSCRIPTS IN APPEALS TO COMPLETE THE RECORD. JCC. |

| 09/09/2005 D001 | DESIGNATION TO CT REPORTER | AMENDED DESIGNATIONS. SENT TO APPEALS |
|---|---|---|
| 08/18/2005 D001 | INDEX PREPARED | CAN'T SEND OUT WAITING ON TT'S FILE LOCATED IN DRAWER/ ked |
| 07/08/2005 D001 | **FILE SENT TO APPEALS DEPT** | FILE SENT TO APPEALS TO PREPARE THE RECORD -VE |
| 07/06/2005 D001 | NOTICE OF APPEAL FILED FROM | MISDEMEANOR REFERENCE CASE NUMBER 03-CM-18502 (L.R.) |

## Docket

Name: HUNT, DENNIS     Person Id: 002731412     Party: P001     Party Closed - Status: 08/15/2003

UCN: 292003SC014728P001TA     Case Number: 03-CC-014728     Case Created: 06/18/2003     Division: L     Case Closed - Status: 08/15/2003

Case Type Description: OTHER CIVIL, SMALL CLAIM     Court Type: COUNTY CIVIL

| Filing Date | Party | Description | Text |
|---|---|---|---|
| 08/15/2003 | **General** | DISMISSAL AFTER HEARING | |
| 08/15/2003 | **General** | FINAL ORDER OF DISMISSAL | FINAL ORDER OF DISMISSAL 8/14 THE OAK II CONDOMINUIM ASSO. INC |
| 08/12/2003 | **General** | ************************ | ************************* JOINT DISMISSAL W/PREJUDICE DEF OAKS II CONDOMINIUM ASSOC INC |
| 07/07/2003 | **General** | SUMMONS RET'D SERVED ON | SUMMONS RET'D SERVED ON 07/02/03 THE OAKS UNIT II CONDOMINIUM ASSOCIATION, INC |
| 06/27/2003 | **General** | ORDER OF INDIGENCY | ORDER OF INDIGENCY GRANTED AS TO DENNIS HUNT SIGNED 6/26/03 |
| 06/27/2003 | **General** | SUMMONS ISSUED | SUMMONS ISSUED AS TO OAKS UNIT II ETC SET 7/28/03 @ 3:30 SH |
| 06/24/2003 | **General** | CORRESPONDENCE | CORRESPONDENCE LETTER TO JUDGE FROM DENNIS HUNT |
| 06/23/2003 | **General** | ORDER OF INDIGENCY | ORDER OF INDIGENCY DENIED SIGNED 6/23/03 |
| 06/18/2003 | **General** | **STMT CLAIM $2500.01-$5000.00 | STMT CLAIM $2500.01 THRU $5000 |
| 06/18/2003 | **General** | AFFIDAVIT OF INDIGENCY | AFFIDAVIT OF INDIGENCY |
| 06/18/2003 | **General** | CERTIFICATE OF INDIGENCY | CERTIFICATE OF INDIGENCY |
| 06/18/2003 | **General** | NO SUMMONS ISSUED | NO SUMMONS ISSUED |

*EXHIBIT*
*# 23*



Printed from http://www.hillsboroughcounty.org/bocc/boardscouncils/commdetail.cfm on 05/04/2009

## Law Library Board

**Purpose:**
The purpose of this Board is to collect, maintain, and make available legal research material not generally obtainable elsewhere in the County for use by the bench, bar, students, and the general public.

**Maximum Membership:**
Five appointed voting directors, and the County Attorney or his designee serves as an ex-officio, non-voting director. Of the five appointed directors.
   - One director shall be engaged in a solo law practice or as part of a small law firm containing no more than three (3) principals;
and
   - One director shall have a demonstrated interest in assisting pro se litigants

**Length of Terms:**
Five year terms, commencing on the 1st of July

**Authority:**
Hillsborough County Ordinance No. 01-16

**Meeting Time and Place:**
Annually and at call of the Chairman.

**Special Requirements:**
Directors shall be Members of the Hillsborough County bar in good professional standing and of high moral character.

**Contact Person:**

   Norma Wise, Director
   Law Library
   501 E. Kennedy Blvd.
   Suite 100
   Tampa, FL 33602
   272-5818

## Law Library Board Members

| Name | Term |
|------|------|
| Mr. Stephen N. Gordon | 09/19/07 - 06/30/12 |
| **Ex-officio, non-voting director** Ms. Mary Helen Farris | . |
| **Small law firm/solo law practice** Mr. Joseph M. Davis | 10/03/07 - 06/30/12 |
| **solo law practice/or small law firm** Ms. Tiffany S. Craig | 09/19/07 - 06/30/12 |
| **Solo law practice/small law firm** Mr. Horace A. Knowlton, IV | 09/19/07 - 06/30/12 |
| **Solo law practice/small law firm** | |

*EXHIBIT*
*# 24*

Mr. William D. Mitchell          01/03/08 - 06/30/12

Back to Top