## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DENNIS HUNT,**

    **Plaintiff,**

**v.**                                              Case No.  8:07-cv-1168-T-30TGW

**NORMA J. WISE, as Library Director,
James J. Lunsford Law Library, in her
official capacity and individual capacities,
et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant David L. Pilver's Motion for Summary Judgment and Memorandum of Law (Dkt. 28), Defendant Norma J. Wise's Motion for Partial Summary Judgment and Memorandum of Law (Dkt. 32), Defendant Law Library Board's Motion for Summary Judgment and Memorandum of Law (Dkt. 40), and Plaintiff Dennis Hunt's Responses to same (Dkts. 57-59).  The Court, having reviewed the motions, memorandums of law, responses, and being otherwise advised in the premises, finds that Defendant David L. Pilver's Motion for Summary Judgment (Dkt. 28) should be denied and Defendants Norma J. Wise and Law Library Board's Motions for Summary Judgment (Dkts. 32 and 40) should be granted.

## BACKGROUND

Plaintiff's claims arise from his use of the James J. Lunsford Law Library (the "Law Library"). In 2002 and 2003, Plaintiff used the Law Library on a frequent basis to research case law and court procedures. Plaintiff is not a lawyer, but used the Law Library's many resources to educate himself on the law and court procedures for a civil case that he was involved with and, more generally, for his own personal interest in learning about the law and courtroom procedure.

At some point in 2003, Plaintiff had several encounters with David L. Pilver ("Pilver"), the Senior Library Assistant. The first significant encounter involved Plaintiff's request for CLE materials. Pilver informed Plaintiff that only active members of the Florida Bar who had a Hillsborough County address could check out CLE materials and Plaintiff expressed disapproval of that policy and asked for the Law Library's director's name.

The next significant encounter involved Plaintiff's use of a personal portable copy/fax machine in the Law Library. Pilver observed Plaintiff using the machine and advised Plaintiff that the Law Library had a rule and/or policy that prevented patrons from using personal photocopying machines. Plaintiff stopped using the machine but asked Pilver what rule and/or policy stated that patrons could not use personal copying machines. Pilver could not identify the specific rule and/or policy. Subsequently, on April 30, 2003, Plaintiff sent a written public records request to Norma J. Wise ("Wise"), the Law Library's Director, requesting written verification of the rule and/or policy preventing patrons from using

personal copying machines. In response, Wise informed Plaintiff that there was no formal rule barring patrons from bringing personal copying machines to the Law Library, but that the Law Library did not permit such activity because it relied on money received from the copiers to maintain its budget for book costs and operating expenses.

On May 5, 2003, Plaintiff wrote another letter to Wise, questioning the validity of Wise's assertions regarding the Law Library's position on personal photocopying machines and the procedures for collecting and protecting the money in the photocopying machines. At the end of the letter, Plaintiff made a comment about Pilver watching cable television while working at the front desk.

After complaining to Wise about Pilver's conduct, Plaintiff claims Pilver began to single him out and treat him with disdain during his visits to the Law Library. As a result, on May 19, 2003, Plaintiff wrote another letter to Wise, complaining that Pilver was handing heavy books to Plaintiff in a dangerous manner. Specifically, Plaintiff stated that Pilver "stretches one arm out, with the book in one hand, at a level of height of my forehead or above." (Dkt. 30, Exhibit 4 thereto). Plaintiff also complained that Pilver did not like to be disturbed while "watching his television programs." (Id.). In response to Plaintiff's May 19, 2003 letter, Law Library staff were told to stop handing books to patrons and only put the books on the counter top. According to Pilver, around this same time, he started to view Plaintiff's actions as "annoying," and started to wonder if Plaintiff was out to get him. (Pilver's deposition at 90:10-12; 93:21-24).

During this same relevant time, the Law Library Board held a public meeting on whether Law Library patrons were entitled to use personal photocopying machines. At the meeting, an Assistant Hillsborough County Attorney advised the Board that under Florida law, patrons of the Law Library were permitted to bring their own duplicating devices. Subsequently, the Law Library Board permitted Plaintiff and other patrons to use personal photocopying machines.

According to Pilver, a third significant encounter with Plaintiff involved Plaintiff's dissatisfaction with copies Plaintiff had made with the Law Library's copy machine. When Pilver told Plaintiff the amount of money he owed for the number of copies he made, Pilver claims that Plaintiff said that some of the copies were not good, because they were not readable. Pilver then allegedly agreed to reimburse Plaintiff for the unreadable copies and waited for Plaintiff to pay for the difference. According to Pilver, Plaintiff threw the copies across the table at him and said that he did not want any of the copies anymore. Plaintiff then walked out of the library. According to Pilver, he never informed anyone at the Law Library about this incident.

On July 1, 2003, Plaintiff and Pilver had another significant encounter. According to Plaintiff, Pilver failed to provide Law Library patrons with a five minute warning prior to the 8:00 p.m. closing time, as was his custom. When Plaintiff realized the library was about to close, he headed for the door where he was confronted by Pilver. Pilver allegedly blocked Plaintiff's egress and accused him of trespassing. Plaintiff claims Pilver berated him, acted

in a very aggressive manner, and then finally moved out of the way and allowed him to leave. Plaintiff then claims he observed Pilver discussing the incident with law enforcement officers. Plaintiff discussed the incident with the officers, and later reported the incident to Wise in another letter dated July 3, 2003.

Pilver's version of the July 1, 2003 incident varies significantly. According to Pilver, when he asked Plaintiff to leave the library, because it was after closing time, Plaintiff "exploded," started yelling and cursing and said something to the effect of "You're messing with the wrong guy." (Pilver's deposition at 104-108). Plaintiff's behavior scared Pilver and Pilver was afraid that Plaintiff might hit him. According to Pilver, after Plaintiff left, he closed the Law Library and walked across the street to the county center and told the county security officers about the incident with Plaintiff. The security officers informed Pilver that if he ever needed them to remove someone from the Law Library that was acting in a threatening manner, he could give them a call and they would take care of the situation. Significantly, Plaintiff and Pilver were the only individuals present in the Law Library during the July 1, 2003 incident.

Pilver then discussed the July 1, 2003 incident with Sandra Kellaher ("Kellaher"), the Law Library Board's Director. Pilver could not discuss the incident with Wise, because she was out on medical leave. According to Pilver, Kellaher told Pilver that if he ever felt threatened in the future, he should use his common sense and handle the situation as he saw fit to protect himself or the other Law Library patrons.

According to Plaintiff, he visited the Law Library on July 3, 2003 and was not asked to leave. However, on July 5, 2003, Plaintiff arrived at the Law Library around 3:00 p.m. Plaintiff began conducting research at a work station in the Law Library. He then observed a security officer having a conversation with Pilver. Following the conversation, the security officer told Plaintiff that he had to leave. Plaintiff refused to leave and Tampa Police Officer Charles Hatchcox informed Plaintiff that he was trespassing after warning. When Plaintiff still refused to leave the Law Library, he was arrested.

As a result, Plaintiff filed the instant action. Plaintiff's Verified Amended Complaint alleges four claims under 42 U.S.C. § 1983 as follows: (1) claim against Defendant Law Library Board for its violation of Plaintiff's First Amendment right by barring Plaintiff from the Law Library (Count I); (2) claim against Defendant Wise, in her individual capacity, for violating Plaintiff's First Amendment right by barring Plaintiff from the Law Library (Count II); claim against Pilver, in his individual capacity, for violating Plaintiff's First Amendment right by barring Plaintiff from the Law Library (Count III); and (4) claim against the Law Library Board and Wise, in her official capacity, for violating Plaintiff's First Amendment and Fourteenth Amendment rights by barring Plaintiff from the Law Library and failing to provide Plaintiff with notice and an opportunity to be heard regarding Plaintiff's ban from the Law Library (Count IV).

# DISCUSSION

## I. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis

### A. Pilver's Motion for Summary Judgment on Qualified Immunity

Pilver argues in his Motion for Summary Judgment (Dkt. 28), that he is entitled to qualified immunity. Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. See Wilson v. Layne, 526 U.S. 603, 609 (1999). The doctrine shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Eleventh Circuit has recognized that "qualified immunity liberates government agents from the need to constantly err on the side of caution by protecting them both from liability 'and the other burdens of litigation, including discovery.'" Holmes v. Kucynda, 321 F.3d

1069, 1077 (11th Cir. 2003) (quoting Lambert v. Fulton County, 253 F.3d 588, 596 (11th Cir. 2001)).  At the same time, qualified immunity does not offer protection "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'"  Harlow, 457 U.S. at 815 (quoting Wood v. Strickland, 420 U.S. 308, 322 (1975)) (emphasis omitted).

To receive qualified immunity the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)).  It is clear from the record that Pilver was acting within his discretionary authority on July 5, 2003.  From there, qualified immunity analysis proceeds in two steps.  Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).  First, the court must address the "threshold question" of whether the facts as alleged, viewed in the light most favorable to plaintiff, establish a constitutional violation at all.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no constitutional violation is established, then the defendant prevails, and "there is no necessity for further inquiries concerning qualified immunity."  Id. If, however, under the plaintiff's version of facts it appears a constitutional right has been violated, the court must then determine whether that right was clearly established at the time the events in question occurred.  Id.

The Law Library Board is permitted to regulate the use of its libraries to prohibit disruptive conduct.  As Stated by the Supreme Court:

> A State or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and nondiscriminatory manner, equally applicable to all and administered with equality to all. It may not do so as to some and not as to all . . . it may not invoke regulations as to use-whether they are ad hoc or general-as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights.

Brown v. State of La., 383 U.S. 131, 143 (1966). Plaintiff had a fundamental right to access the Law Library and receive the information provided therein. See id.; see also Martin v. Struthers, 319 U.S. 141, 143 (1943) (recognizing the right of freedom of speech and press under the First Amendment embraces both the right to distribute literature and the right to receive it); Bounds v. Smith, 430 U.S. 817, 828 (1977) (holding prison inmates had fundamental constitutional right of access to the courts in the form of adequate law libraries or adequate assistance from persons trained in the law).

In Brinkmeier v. City of Freeport, the court made it clear that banning a person forever from using a library "for a single instance of misconduct no matter how minor" could not be considered reasonable in light of the First Amendment or recognized concepts of due process. No. 93 C 20039, 1993 WL 248201 (N.D. Ill. July 2, 1993). In Brinkmeier, the court relied on the Third Circuit's decision in Kreimer v. Bureau of Police for the Town of Morristown, 958 F.2d 1242 (3d Cir. 1992), to determine that a person has a First Amendment right to receive information. Although that right is not without limitation, any restriction on a person's First Amendment right to access a library must be reasonable and not an effort to suppress expression merely because a public official opposes the speaker's view.

Brinkmeier, 1993 WL 248201 at *5; see also Kreimer, 958 F.2d at 1242 (noting that prohibiting disruptive behavior is perhaps the clearest and most direct way to achieve maximum library use); Neinast v. Board of Trustees of Columbus Metropolitan Library, 346 F.3d 585 (6th Cir. 2003) (holding that library's requirement that patrons wear shoes did not violate patron's First Amendment right because the requirement was rationally related to legitimate government interests of protecting public health and safety); Madrid v. Lopez, 1997 WL 102508, *1 (N.D. Cal. 1997) ("restrictions on talking and other disruptive behavior in a library are fundamentally reasonable"); Tronsen v. Toledo-Lucas County Public Library, 2008 WL 2622939 (N.D. Ohio June 30, 2008) (holding that plaintiff's suspension for six months from accessing library reasonable when plaintiff disrupted a female library patron's right to quiet enjoyment by handing her an offensive note).

Pilver's Motion for Summary Judgment is premised on Pilver's version of the facts surrounding the July 1, 2003 incident. First, there is no doubt that when Plaintiff was removed from the Law Library on July 5, 2003 and charged with trespassing, federal law was clear, as set forth herein, that a person has a First Amendment right to access and enjoy a library and that any limitation on this access must be reasonable. According to Pilver, the Law Library "can certainly constitutionally remove [Plaintiff] for threatening behavior" and summary judgment is appropriate if Pilver was motivated at least in part by objectively valid reasons. (Dkt. 28).

The Court agrees that Plaintiff's First Amendment right to enjoy the Law Library could be curtailed if he acted in a threatening manner. However, there is an issue of material disputed fact as to whether Plaintiff acted in a threatening manner. As explained by the Eleventh Circuit in Bogle v. McClure, "in a case involving mixed motives, the presence of a jury issue about a defendant's improper intent does not necessarily preclude qualified immunity." 332 F.3d 1347, 1355-56 (11th Cir. 2003). However, a defendant is entitled to qualified immunity only if the "record *indisputably* establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations." Bogle, 332 F.3d at 1355 (quoting Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000)) (emphasis in original).

In this case, the record does not indisputably establish that Pilver was motivated, at least in part, by lawful considerations. According to Plaintiff, he did not act in an aggressive, threatening, or irate manner on July 1, 2003, when Pilver asked him to leave because the Law Library was closing. Plaintiff also contends that Pilver had it out for him and wanted to ban Plaintiff from the Law Library out of retaliation for the complaints Plaintiff had made about Pilver in his letters to Wise. Moreover, it is undisputed that on July 5, 2003, when Pilver reported Plaintiff to security, Plaintiff was researching in the Law Library and not disrupting Pilver or any other patrons. The record is also undisputed that Plaintiff never disrupted any patron of the Law Library and that the Law Library never received any complaints regarding Plaintiff's behavior from any other patron.

Assuming the evidence in a light most favorable to Plaintiff, the nonmovant, as the Court must do at the summary judgment stage, there is a significant material disputed fact that must be left for the jury to decide. Specifically, the jury will have to determine whether, based on the evidence, Pilver was motivated by an objectively valid reason. Because there are disputed facts regarding the July 1, 2003 incident, it is impossible for the Court to determine whether a reasonable library assistant, faced with the same set of facts, would have acted similarly to Pilver and had Plaintiff removed and banned from the Law Library. It is also impossible to determine whether a reasonable person, in the same position as Pilver, would have known that banning Plaintiff from the Law Library was a violation of clearly established law, because the facts leading up to Plaintiff's removal from the Law Library are entirely in dispute. If a jury believes Plaintiff's allegations that he did not act in a threatening or aggressive manner on July 1, 2003, then a jury could find that Pilver's behavior was clearly and obviously in violation of existing federal law, and that a reasonable library assistant would know that banning a library patron, for no good reason, is a violation of that patron's First Amendment right. Accordingly, Pilver's Motion for Summary Judgment must be denied.

### B.  **Wise's Motion for Summary Judgment**

Wise argues in her Motion for Summary Judgment (Dkt. 32) that she is entitled to judgment as a matter of law because she was on medical leave during the July 1 and July 5 incidents between Plaintiff and Pilver. The record is clear and undisputed that Wise was not

involved in the decision regarding how Pilver should deal with Plaintiff after Pilver perceived Plaintiff to be a threat, according to his version of the events that transpired on July 1, 2003. Pilver testified during his deposition that he did not discuss the incident with Wise because she was on leave. Wise also testified during her deposition that she had no role in advising Pilver on how to handle the circumstances with Plaintiff. Clearly, Wise, in her individual capacity, cannot be liable for violating Plaintiff's First Amendment right if she was not involved in this decision, directly, or in a supervisory role. Accordingly, Wise's Motion for Summary Judgment must be granted.

### C. Law Library Board's Motion for Summary Judgment

The Law Library Board argues, in part, in its Motion for Summary Judgment (Dkt. 40) that it is entitled to summary judgment as a matter of law because the Law Library Board did not have a custom, policy, or practice that confers liability under Section 1983.

A governmental entity is not liable under Section 1983, merely as a matter of *respondeat superior*, for constitutional injuries inflicted by its employees. Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (citation omitted). A local government is, however, liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) (holding that liability of municipalities and other governmental entities under Section 1983 is limited to instances of official policy or custom). To attribute liability

to the Law Library Board, Plaintiff must demonstrate that it had an official policy or custom that was "the moving force of the constitutional violation." Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1211 (11th Cir. 1993) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)).

The Eleventh Circuit "has interpreted Monell's policy or custom requirement to preclude Section 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decision making discretion to the subordinate, but retains the power to review the exercise of that discretion." Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997). Thus, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." Id. at 1401; see Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 638 (11th Cir. 1991) (holding that mayor was not the final policymaker with respect to zoning decisions where the city charter provided that the city council could override the mayor's veto of zoning ordinances); Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996) (accepting concession that city police chief was not final policymaker with respect to employment decisions where police chief's decisions could be reversed by the city manager); Martinez v. City of Opa-Locka, 971 F.2d 708, 713-15 (11th Cir.1992) (finding final policymaking authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review").

In this case, the undisputed facts demonstrate that the Law Library Board did not have an instituted policy, custom, or procedure that led to the alleged violation of Plaintiff's First

and Fourteenth Amendment rights. Moreover, Pilver was never given the authority by the Law Library Board to have Plaintiff removed and/or banned from the Law Library and Pilver did not have final policymaking authority to decide that Plaintiff should be banned from the Law Library. Specifically, Wise testified during her deposition that the Law Library Board has no written or non-written policies concerning trespass warnings or enforcement of trespass warnings. She specified that "[t]hese are criminal matters and are handled by law enforcement." (See Wise's deposition at 23:18-22). The facts are also undisputed that when Pilver consulted with Kellaher, she told him to use his best judgment, but did not tell him that he could trespass Plaintiff and/or ban him from the library. During Plaintiff's criminal trial before Judge Barber, Kellaher testified that she told Pilver that if he felt he was in physical danger, he should go into a room and call security. Kellaher also stated that Plaintiff should not be kicked out of the Law Library if he came into the Law Library, went to a cubicle, and minded his own business.

Plaintiff argues that although the Law Library Board may not have an official written policy or custom regarding trespass situations, it had an ad hoc policy to permanently ban him from the Law Library. However, the record also rebuts this argument. In fact, at the conclusion of the 2005 criminal trial before Judge Barber, Judge Barber specifically held that he would not order Plaintiff to stay away from the Law Library.[1] Plaintiff testified during his deposition that he never made a request to the Law Library Board to return to the Law

---

[1] At the conclusion of the 2003 criminal trial before Judge Nazaretian, Judge Nazaretian ordered Plaintiff to stay away from the Law Library.

Library and has not visited the Law Library since his arrest on July 5, 2003. Clearly, these facts indicate that the Law Library Board did not have an ad hoc policy to have Plaintiff permanently banned from the Law Library. Rather, this issue was decided in the criminal trials, first by Judge Nazaretian, when he ordered Plaintiff to stay away from the Law Library, and then by Judge Barber, when he ordered that Plaintiff did not have to stay away from the Law Library. Plaintiff, for whatever reason, has simply chosen to not return to the Law Library or discuss the matter with the Law Library Board. Accordingly, the Law Library Board's Motion for Summary Judgment must be granted.

## CONCLUSION

For the reasons set forth herein, it is therefore ORDERED AND ADJUDGED that:

1. Pilver's Motion for Summary Judgment (Dkt. 28) is hereby **DENIED.**

2. Wise's and the Law Library Board's Motions for Summary Judgment (Dkts. 32 and 40) are hereby **GRANTED.**

**DONE** and **ORDERED** in Tampa, Florida on July 17, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-1168.mts4sumjudg-FINAL.frm